# TOWN OF LEXINGTON vs. TOWN OF BEDFORD.[1]

Middlesex. April 2, 1979. — July 31, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & LIACOS, JJ.

*Retirement. Pension. Veteran. Municipal Corporations*, Reimbursement for payment of pension, Municipal finance, Home rule. *Statute*, Construction. *Lexington. Bedford. Interest*, Contract. *Notice*.

In an action under G. L. c. 32, § 59A, by the town of Lexington seeking reimbursement from the town of Bedford for a portion of a pension paid pursuant to the Veterans' Retirement Act, questions as to the propriety of an actuary's procedure for determining the extent of Bedford's obligation and Lexington's compliance with the notice provisions of § 59A did not present genuine issues of material fact but only questions of law. [566]

Upon appeal from a judgment ordering the town of Bedford to reimburse the town of Lexington for a portion of a pension paid pursuant to the Veterans' Retirement Act, issues as to the constitutionality of G. L. c. 32, § 59A, and Lexington's failure to comply with the notice provisions of § 59A, which were not raised below, were not considered by this court. [566-568]

Under G. L. c. 32, §§ 56-60, the Veterans' Retirement Act, public service for remuneration in the Commonwealth is creditable, regardless of whether the employer has accepted the Act. [568-572]

The reimbursement provision of G. L. c. 32, § 59A, applies to all governmental units regardless of whether they have accepted the Veterans' Retirement Act under § 60. [572-575]

The interest provisions of G. L. c. 231, § 6C, were applicable to an action under c. 32, § 59A, by which the town of Lexington sought reimbursement from the town of Bedford for a portion of a pension paid pursuant to the Veterans' Retirement Act, and Lexington's letters of notice informing Bedford of the basis and extent of its obligation constituted sufficient demand for purposes of § 6C. [575-576]

---

[1] A brief for the town of Concord, as amicus curiae, also was filed.

CIVIL ACTION commenced in the Superior Court on February 17, 1977.

The case was heard by *Doerfer, J.*, on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Douglas A. Randall* for the defendant.

*Katherine Hendricks* for the plaintiff.

*Samayla D. Deutch*, Special Town Counsel, & *Paula Bonnell*, for the town of Concord, amicus curiae, submitted a brief.

LIACOS, J. This is an action under G. L. c. 32, § 59A,[2] by which the town of Lexington seeks reimbursement from the town of Bedford for a portion of a pension paid by Lexington pursuant to the Veterans' Retirement Act (Act). G. L. c. 32, §§ 56-60. Lexington's claim rests on the undisputed fact that a number of the years of governmen-

---

[2] General Laws c. 32, § 59A, inserted by St. 1968, c. 601, § 1, provides: "If a retired veteran or the widow of a veteran receives a pension from the commonwealth or from a political subdivision thereof under the provisions of section fifty-six, fifty-seven, fifty-eight or fifty-eight B, and if a portion of such pension or widow's allowance is based on the creditable service of such veteran in a governmental unit other than the unit which pays such pension or allowance, the governmental unit making such payment shall be reimbursed in full by such other governmental unit for such portion of the pension or allowance as shall be computed by the actuary in the division of insurance. The treasurer of the governmental unit paying such pension or allowance shall annually, on or before January fifteenth upon certification of the retiring authority of such governmental unit, notify the treasurer of such other governmental unit of the amount of reimbursement due therefrom for the previous calendar year, and the treasurer of such other governmental unit shall forthwith take such steps as may be necessary to insure prompt payment of such amount. All such payments from the other governmental unit shall be charged to such funds as shall be appropriated for payment of pensions and allowances under section fifty-six, fifty-seven, fifty-eight or fifty-eight B, and when received they shall be credited to and added without further appropriation to such similar appropriation as shall have been made for the payment of similar pensions and allowances in the paying governmental unit. In default of any such payment, the paying governmental unit may maintain an action of contract to recover the same."

tal service necessary to qualify the veteran for rights under the Act accrued while he was in the employ of Bedford. In the proceedings below, Lexington moved for summary judgment. A judge of the Superior Court allowed the motion and entered judgment ordering Bedford to pay $10,798.72, with interest and costs.[3] Bedford took an appeal to the Appeals Court, which comes before us by our granting of Lexington's application for direct appellate review. We affirm.

Under the Veterans' Retirement Act, a veteran who entered governmental service before June 30, 1939 (G. L. c. 32, § 60), and who remains in such service for a certain number of years (G. L. c. 32, §§ 56, 57, 58), is eligible to receive a pension from the governmental unit from which he retires, at no cost to himself. Sections 56 through 59 are not, however, mandatory for all governmental units in the Commonwealth but rather are only "in effect in any county, city, town or district which accepted them." G. L. c. 32, § 60, as amended through St. 1973, c. 207, § 7. Statute 1968, c. 174, an act of the Legislature, provided that notwithstanding the version of § 60 then in force, §§ 56-59, inclusive, "shall be in effect in any town which accepts said sections prior to January first, nineteen hundred and seventy by majority vote of the selectmen." By majority vote of its selectmen, Lexington accepted the relevant provisions of the statute on February 19, 1969.

On July 31, 1974, Dr. Ado Commito retired from his post as assistant superintendent of the Lexington public schools. Thereafter, Lexington began to pay him pension benefits under G. L. c. 32, § 58B. Section 58B enables a veteran, who is eligible under § 58 for a pension (seventy-two per cent of the highest annual rate of compensation for the grade held at retirement), to receive a lesser year-

---

[3] The money judgment awarded Lexington includes reimbursement for the years 1974, 1975, and 1976. Lexington had also sought an injunction ordering Bedford to pay such amounts of pension as became due in years subsequent to 1976. The judge denied such relief, a ruling which Lexington has left unchallenged.

ly amount in his lifetime with the provision that on the veteran's death, his widow would receive two-thirds of the lesser amount for life. At the time of his retirement, Dr. Commito's annual salary was $30,437. During the remaining portion of 1974, and the calendar years 1975 and 1976, he was paid pension amounts of $7,062.40, $16,949.77, and $17,099.77, respectively.

Dr. Commito's eligibility for § 58 benefits rests first on the fact that he is a veteran under G. L. c. 32, § 1: he was in active wartime service in the army from December 4, 1942, to March 5, 1946, received numerous decorations, including a Purple Heart medal, and was honorably discharged. It was determined also by the Lexington board of retirement that he had engaged in governmental service in the Commonwealth for at least "a total period of thirty years in the aggregate" (G. L. c. 32, § 58), the earliest service having occurred before June 30, 1939. The service included employment from September 1, 1938, to March 10, 1960, as a teacher, then as primary school principal in the Everett public school system; employment from March 10, 1960, to September 1, 1969, as principal and then as assistant superintendent in the Bedford public school system; and finally employment as assistant superintendent for the Lexington public schools from September 1, 1969, to July 31, 1974.

On August 28, 1974, an actuary in the division of insurance of the Department of Banking and Insurance determined that 26.28% of Dr. Commito's pension was allocable to Bedford. Based on this determination, the secretary of the Lexington board of retirement sent notice on January 30, 1975, to the treasurer of Bedford that $1,856 was due as reimbursement for Bedford's share of Dr. Commito's 1974 pension payment. On January 23, 1976, the secretary sent notice to the treasurer that $4,454.90 was due as Bedford's share of Dr. Commito's 1975 pension payment. On January 14, 1977, the secretary sent notice that $4,493.82 was due as Bedford's share of Dr. Commito's 1976 pension payment. At no time has Bedford

reimbursed Lexington for any portion of Dr. Commito's pension.

1. *Preliminary Issues.*

Before us, Bedford raises three preliminary issues any of which, if meritorious, would be dispositive of this appeal.

Bedford challenges the judge's ruling on Lexington's motion for summary judgment on the ground that the case presented two genuine issues of material fact. It first claims that an issue of fact was raised regarding the actuary's procedure for determining the extent of Bedford's reimbursement obligation. Section 59A provides that one governmental unit shall reimburse another for "such portion of the pension or allowance as shall be computed by the actuary in the division of insurance." Bedford objects to the propriety of the method used by the actuary to determine Bedford's portion of Dr. Commito's pension. There is no dispute, however, as to how the actuary made his determination. Bedford itself recognizes that the computation was based on the number of years worked. Neither Bedford nor Lexington presented any evidence that the actuary may have considered other factors. Whether the factors actually considered were inappropriate or inadequate under the statute present only a question of law.

Bedford claims that an issue of fact was raised regarding Lexington's compliance with the notice provisions of § 59A. As to two of its three reimbursement demands, Lexington sent notice after January 15, the deadline set by statute. On all three occasions, notice was sent by the secretary of the retirement board rather than by the town treasurer as required. Bedford acknowledges these facts and argues that these deficiencies in notice ought to defeat Lexington's claim. Whether they do is on this record a question of law. These matters raised no genuine issue of material fact.

Bedford claims also that the arbitrariness of the actuary's computation and the deficiencies in notice relieve it

as matter of law of the obligation to reimburse Lexington for pension payments made in 1974, 1975, and 1976. Bedford challenges the computation on the ground that § 59A contains no standards to guide the actuary in the discharge of his duty and constitutes an unconstitutional delegation of powers. Regarding notice, Bedford asserts that the elements of the notice provision are mandatory, not directory, and that Lexington's failure to comply with the time and manner requirements must defeat its claim.

Lexington maintains that neither the computation nor the notice issue is properly before us, as it was not raised below. Bedford challenged the computation in the Superior Court on the ground that it was made in the absence of rules and regulations by the Commissioner of Insurance. There is no suggestion of a constitutional attack on the statute itself. Bedford first challenged the time and manner of notice in a motion to amend its answer filed one year and three months after the original answer and ten days after the judge granted Lexington's motion for summary judgment. The judge denied the motion to amend. Bedford does not contest this ruling[4] but relies instead on the fact that in his memorandum regarding final judgment, the judge referred to the substance of the amended answer, and allegedly indicated thereby that the issue was before the court. The record indicates that the reference occurred in the context of Lexington's request for interest under G. L. c. 231, § 6C, as appearing in St. 1973, c. 1114, § 156. As noted in the memorandum of decision, § 6C provides that in "all actions based on con-

---

[4] Bedford's answer was not a pleading to which a responsive pleading is permitted. See Mass. R. Civ. P. 7(a), 365 Mass. 748 (1974). Given that Bedford made no attempt to amend within twenty days of its answer, it was not entitled to amend as a matter of course. See Mass. R. Civ. P. 15(a), 365 Mass. 761 (1974). Consequently, Bedford was free to amend only by leave of court or by consent of the adverse party. *Id.* Leave is to be given unless some good reason appears for denying it. *Castellucci* v. *United States Fidelity & Guar. Co.*, 372 Mass. 288, 289 (1977). We need not decide whether good reason appears on this record.

tractual obligation" the judgment shall include interest from "the date of the breach or demand," if established, and, if not, from "the date of the commencement of the action." The judge held that the letters sent by the secretary of the Lexington board of retirement were "sufficient demand to begin the accrual of interest." Whether notice was sufficient to begin accrual of interest under G. L. c. 231, § 6C, is distinct from whether it was sufficient to entitle Lexington to rights under G. L. c. 32, § 59A. In sum, then, neither the computation nor the notice issue was presented below as it is here and, therefore, neither need be considered on appeal. See, e.g., *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 87-88 (1977).

2. *Obligation to Reimburse Under G. L. c. 32, § 59A.*

It is undisputed that Bedford has never accepted the Veterans' Retirement Act. Based on this fact, Bedford advances two arguments for the proposition that it has no obligation to reimburse under § 59A. First, it contends that Dr. Commito is not eligible for a veteran's pension, and second, even if he were, a nonaccepting town is not subject to § 59A. The first argument looks to provisions of the Act other than § 59A; the second depends on the construction of § 59A within the context of the Act. Based on the pertinent statutory language and the policy of the Act, we find neither argument persuasive.

a. It is clear that a governmental unit can have no obligation to reimburse another unit under § 59A unless the pension, on which the claim for reimbursement rests, is paid to a claimant eligible under the Act. See G. L. c. 40, § 53; *Jones* v. *Natick*, 267 Mass. 567 (1929). Section 58, as amended through St. 1973, c. 207, § 3, the eligibility provision that Dr. Commito is alleged to have satisfied, provides that: "A veteran who has been in the service of the commonwealth, or of any county, city, town or district or any housing authority or any redevelopment authority, for a total period of thirty years in the aggregate, shall, at his own request, with the approval of the retiring authority, be retired from active service at seventy-two

per cent of the highest annual rate of compensation, . . . payable to him while he was holding the grade held by him at his retirement, and payable from the same source." There is no dispute that Dr. Commito is a veteran, see *Weiner* v. *Boston*, 342 Mass. 67, 71 (1961), or that he has retired from active service, see *Kennedy* v. *Holyoke*, 312 Mass. 248, 249 (1942); *Caswell* v. *Somerville Retirement Sys.*, 306 Mass. 373, 375-376 (1940). Nor is there any dispute that his retirement was approved by the retiring authority, see *Hoban* v. *Boston Retirement Bd.*, 355 Mass. 681, 684 (1969); *Horrigan* v. *Pittsfield*, 293 Mass. 17, 19 (1935). Further, there is no question that Dr. Commito's years of governmental service in the Everett, Bedford, and Lexington school systems, as well as in the army (G. L. c. 32, § 58A), total more than thirty years. Bedford claims, however, that not all remunerative[5] governmental service counts toward fulfilment of the length of service requirement. It maintains that, on the contrary, only service to a unit that has accepted the Act is creditable. Given that more than nine years of Dr. Commito's governmental service occurred in the employ of a nonaccepting unit,[6] Bedford reasons that Dr. Commito has not satisfied the length of service requirement and that, therefore, Lexington's award of the pension cannot obligate it under § 59A.

For our purposes, the crucial words in § 58 are "in the service . . . of *any* . . . town" (emphasis added). Given its usual and ordinary meaning (see, e.g., *Prudential Ins. Co.* v. *Boston*, 369 Mass. 542, 546 [1976]), the phrase "any town" includes towns that have accepted the Act as well as those that have not. There is nothing elsewhere in § 58 to suggest that the Legislature intended otherwise.

---

[5] See *Sullivan* v. *Boston Retirement Bd.*, 359 Mass. 228, 229-230 (1971) (unpaid service is not "service" within the meaning of § 58).

[6] The record indicates that the remainder of Dr. Commito's governmental service occurred in the employ of accepting units.

Bedford nevertheless suggests that a literal interpretation of "any town" has illogical consequences: a veteran will receive retirement credit for his years of service with Bedford if he eventually retires from Lexington, but will not receive credit for the same service if he retires from Bedford. Bedford contends further that a literal interpretation would render meaningless the acceptance provision of § 60.

A literal construction of statutory language will not be adopted when such a construction will lead to an absurd and unreasonable conclusion and the language to be construed "is fairly susceptible to a construction that would lead to a logical and sensible result." *Bell* v. *Treasurer of Cambridge*, 310 Mass. 484, 489 (1941), and cases cited. Moreover, a literal construction will not be adopted when that construction would be inconsistent with other material provisions of the statute and would defeat the aim and object of the legislation. *Cullen* v. *Mayor of Newton*, 308 Mass. 578, 583-584 (1941). *Frye* v. *School Comm. of Leicester*, 300 Mass. 537, 538 (1938). The result to which Bedford objects is not unreasonable in light of the statutory scheme, and the construction that we adopt here does not render meaningless the acceptance provision of § 60.

The offer of a pension to certain veterans who serve the governmental units of the Commonwealth accomplishes two purposes: It provides veterans and their families with an opportunity to obtain a measure of economic security. 3 E. McQuillin, Municipal Corporations § 12.141 (3d rev. ed. 1973). See *Smith* v. *Lowell*, 334 Mass. 516, 519 (1956). More importantly, for our purposes, the offer seeks to induce potentially eligible veterans to remain in public employment and to render efficient service while there. 3 E. McQuillin, *supra*. See *Olivier* v. *Fall River*, 306 Mass. 376, 377 (1940).[7] In this context, § 60 permits a town to

---

[7] As a scheme of inducement, the Act obviously leaves to the veteran the decision whether the inducement is worthwhile. In other words, the veteran might choose employment with an accepting unit in order

weigh the cost of participation against the desirability of attracting veterans to its employ and then determine whether to offer the inducement.

The legislative purpose of the acceptance provision is accomplished independent of the length of service requirement. Section 58 provides that a veteran shall be retired under the Act "with the approval of the retiring authority." General Laws c. 32, § 59, as appearing in St. 1973, c. 207, § 5, defines retiring authority for a town as either the retirement board or selectmen of the town "in which a veteran was employed at the time of his retirement." The retiring authority is without power to withhold its approval from a retiring veteran who otherwise satisfies the requirements of § 58. *Hoban* v. *Boston Retirement Bd.*, *supra* at 683-684. That notwithstanding, unless a veteran obtains for his retirement the approval of a duly authorized body, he is ineligible for benefits under the Act. See *Horrigan* v. *Pittsfield*, *supra* at 19. *Horrigan* indicates that it is acceptance of the Act that empowers the retiring authority to retire an eligible veteran under the pertinent provisions. See also *Rich* v. *Mayor of Malden*, 252 Mass. 213, 216 (1925). Accordingly, acceptance has relevance only at the moment an otherwise eligible veteran retires. Under such a scheme, it is not illogical to treat equally veterans who have satisfied the length of service requirement either by working solely for accepting units or by working a portion of the required thirty years for a nonaccepting governmental unit. For both

to obtain the benefits of the Act. Bedford maintains that when the Act is interpreted so that even nonaccepting units must pay, the veteran's right to choose is inconsistent with home rule. Bedford asserts that inasmuch as it has not accepted the Act, any obligation it has to reimburse Lexington is a function solely of Dr. Commito's decision to choose employment in Lexington over continued employment in Bedford. We disagree with Bedford's underlying assumption in this argument: it is the Legislature, not the veteran, that has obligated towns to contribute to veterans' pensions. See part 2b *infra*. Moreover, we perceive no violation of the principle of home rule. See *Arlington* v. *Board of Conciliation & Arbitration*, 370 Mass. 769, 773-774 (1976).

classes of veterans, acceptance by the employer would be irrelevant at any time before retirement. Moreover, both classes have performed thirty years of public service, precisely the conduct that the Act seeks to induce. We further note that the construction we adopt today does not render the acceptance provision of § 60 meaningless. A town may yet decide not to offer the pension as an inducement to remain in its employ. A veteran who retires from such a unit, regardless of his years of public service, is therefore ineligible for a veteran's pension, not because his service is not creditable, but rather because the retiring authority of his town of retirement has no authority to retire him under the Act.

We conclude that, under the Veterans' Retirement Act, public service for remuneration in the Commonwealth is creditable, regardless of whether the employer has accepted the Act.

b. Bedford claims that even if Dr. Commito were eligible to retire under the Act, § 59A does not apply to towns that have not accepted the Act, and, therefore, it has no obligation to reimburse Lexington. We think the structure and purpose of the Act show the contrary to be true.

By enactment of § 59A, the Legislature has enabled governmental units that approve and pay pensions based on creditable service to units other than the paying unit to spread some of the cost of the pension to those other units. The paying unit was previously left to pay the entire pension regardless of how many years the veteran had served that unit before retirement. Now, units that the claimant served, other than the paying unit, must reimburse the paying unit for its proportionate share of the pension. Section 59A contains no express language that makes the obligation to reimburse subject to acceptance by a town. Moreover, § 59A is not made subject to acceptance by operation of § 60, which applies to §§ 56 to 59, inclusive.

Bedford maintains that the word "creditable," added during the enactment process to qualify the kind of ser-

vice that gives rise to an obligation to reimburse, refers to service in units that have accepted the Act. Otherwise, it contends, "creditable" has no meaning. As we have shown above, whether service in a town's employ is creditable does not depend on acceptance of the Act by that town. Moreover, "creditable service" and "service" are not synonymous. Under the Act three kinds of service are creditable: (1) obviously, remunerative service in the employ of a governmental unit is creditable, see G. L. c. 32, §§ 56, 57, and 58; (2) service as a reserve police officer or call fire fighter is creditable, G. L. c. 32, § 57B; and (3) military service is creditable if the veteran, on his discharge, was reemployed in the public sector within two years, G. L. c. 32, § 58A.

Bedford's other argument relies on the requirement that "[a]ll [reimbursement] payments from the other governmental unit[s] shall be charged to such funds as shall be appropriated for payment of pensions and allowances under section fifty-six, fifty-seven, fifty-eight or fifty-eight B." Bedford interprets the words "as shall be appropriated" to refer to funds appropriated not for reimbursement but for paying pensions directly. The argument is that a town which has not accepted the Act may not make such payments, and such a town is unable to charge reimbursement payments against the appropriate account. Although the quoted language will bear Bedford's interpretation, it is correctly interpreted, as it has been by the Attorney General, Rep. A.G., Pub. Doc. No. 12, at 61, 63 (1969), to require and thus authorize a specific appropriation to satisfy § 59A obligations.[8]

---

[8] It is undisputed that the Legislature may impose pension obligations on municipalities without their consent. See *Horrigan* v. *Mayor of Pittsfield*, 298 Mass. 492, 499 (1937). See also *Ford* v. *Retirement Bd. of Lawrence*, 315 Mass. 492, 493-494 (1944). See generally *Arlington* v. *Board of Conciliation & Arbitration*, 370 Mass. 769, 776-777 (1976); *Board of Health of N. Adams* v. *Mayor of N. Adams*, 368 Mass. 554, 564-566 (1975).

Finally, Bedford finds support for its position in the method for enforcement of the Act chosen by the Legislature. Section 59A provides that in default of a reimbursement payment, "the paying governmental unit may maintain an action of contract to recover the same." Bedford notes that a contract is unenforceable unless there has been offer and acceptance and maintains that by providing for enforcement through contract rather than by mandamus, the Legislature indicated its intent that such actions could not be successful unless the unit from which reimbursement is sought has accepted the Act. This argument is also without merit. We find nothing significant, relative to the issue here, in the Legislature's choice of the means of enforcement. The Legislature has often provided that a statutory obligation to pay is enforceable in contract. See, e.g., G. L. c. 60, § 35 (collection of taxes); G. L. c. 117, § 8 (recovery of improperly paid public assistance). To do so, without more, does not indicate that the elements necessary to create the statutory obligation include the elements of a contractual relationship. Rather, the provision that enforcement is to be an action in contract merely indicates that a party seeking payment will have the remedial rights and duties associated with that form of action. In sum, we conclude that § 59A is unexpressive on whether the obligation to reimburse is subject to acceptance of the Act.

It remains for us to determine how to interpret the Legislature's silence. Two reasons persuade us that § 59A applies to all towns, whether they have accepted the Act or not. First, a construction that includes towns like Bedford furthers the purpose of the enactment. As stated above, the mischief that the Legislature sought to remedy by adding § 59A was the imposition on paying units of the burden of bearing the entire cost of a pension when the pension was based on creditable service elsewhere. Application of the reimbursement obligation to all towns in which creditable service may be performed reduces the likelihood that a paying unit must bear the proportionate

cost of a pension not based on service in its employ. Second, as Lexington argues, when the Legislature has made an amendment to the Veterans' Retirement Act subject to acceptance, it has done so explicitly. See G. L. c. 32, § 57B, inserted by St. 1963, c. 149; G. L. c. 32, § 58C, inserted by St. 1967, c. 400, § 1; G. L. c. 32, § 58D, inserted by St. 1968, c. 338, § 1. The failure to include similar express language in § 59A is significant. See *Commonwealth* v. *Benoit*, 347 Mass. 1, 7 (1964). See also *Commonwealth* v. *Hayes*, 372 Mass. 505, 509-510 (1977). This is especially so in light of the legislative history of § 59A. Three legislative sessions considered creation of a reimbursement obligation before the 1968 session, when § 59A was added to the Act. In each instance, the bill that was rejected expressly provided for reimbursement "where a portion of such pension is based on . . . service in a second political subdivision *which has accepted the provisions of sections fifty-six to fifty-nine, inclusive*" (emphasis added). See 1965 House Doc. No. 3785;[9] 1964 House Doc. No. 425; 1963 House Doc. No. 1733. Clearly, the inclusion of the reference to the subdivisions which have accepted the Act would not have been surplusage. *Diamond Crystal Salt Co.* v. *P.J. Ritter Co.*, 419 F.2d 147, 148 (1st Cir. 1969). Disappearance of that reference over the enactment process therefore supports the conclusion that the Legislature intended to impose the reimbursement obligation on all governmental units whether they had accepted the Act or not. *Commonwealth* v. *Benoit, supra.*

3. *Interest.*

Bedford contests the award of interest on two grounds. First, it argues that an action to enforce a § 59A obligation is not an action based on a contractual obligation, to which G. L. c. 231, § 6C, applies, but rather an action

---

[9] House Doc. No. 3785 of 1965 also provided that "[i]n the event that such second political subdivision has not accepted the provisions of sections fifty-six to sixty, inclusive, the provisions of this section shall not be effective."

based on an obligation created by statute. Second, Bedford maintains that if § 6C is applicable, Lexington's letters of notification did not constitute demand as contemplated under the statute, and interest should therefore accrue from the bringing of the action. Neither argument is persuasive.

As enacted, § 6C applied to "all actions of contract." G. L. c. 231, § 6C, inserted by St. 1968, c. 763. This language made no distinction between obligations that derive from an agreement and those imposed by statute, see *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare*, 359 Mass. 206, 209-210 (1971), and, in our view, applied to both. Section 6C was amended in 1973 as part of a comprehensive revision of the General Laws of civil procedure, St. 1973, c. 1114, § 156, that corresponded with this court's adoption of the Massachusetts Rules of Civil Procedure. Both c. 1114 and the rules took effect on the same date. St. 1973, c. 1114, § 351. Mass. R. Civ. P., 365 Mass. 730 (1974). It therefore appears that the change in § 6C was intended to reflect this development rather than to restrict the availability of the interest remedy. Lexington is entitled to interest on its judgment.

We further conclude that the judge did not err when he found the letters of notice sent by the secretary of the Lexington board of retirement to the town of Bedford to be sufficient demand under the statute. Cf. *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare, supra* at 210 n.2. Section 59A clearly contemplates that performance should occur without the aid of the courts. It therefore requires that notice be given and that the response be prompt. Whether Lexington's notice complied in all regards with the requirements of § 59A is not, as Bedford contends, crucial; what matters is that for purposes of G. L. c. 231, § 6C, the letters of notification informed Bedford of the basis and extent of its obligation, as well as the fact that performance was then due.

*Judgment affirmed.*