Paul P. FLYNN and Sandra
M. Flynn, Plaintiffs,

v.

Eugene BURMAN, Ron S. Jansson, Emmett F. Glynn, Richard L. Boy, and Gail Nightingale, as Members of the Town of Barnstable Zoning Board of Appeals; and The Town of Barnstable, Defendants.

Airway Communications of Avon, LLC; Paul P. Flynn; and Sandra M. Flynn, Plaintiffs,

v.

The Town of Barnstable, Defendant.

Nos. Civ.A. 97–12531–GAO,
Civ.A. 98–11178–GAO.

United States District Court,
D. Massachusetts.

Nov. 19, 1998.

Douglas G. Moxham, Lane & Altman, Boston, MA, for Paul P. Flynn, Sandra M. Flynn, Airway Communications of Avon, LLC.

Andrew Z. Schwartz, Brandon F. White, Daniel H. Haines, Foley, Hoag & Eliot, Boston, MA, for Eugene Burman, Ron S. Jansson, Emmett F. Glynn, Richard L. Boy, Gail Nightingale, The Town of Barnstable.

Eric W. Wodlinger, Choate, Hall & Stewart, Boston, MA, John J. Goldrosen, Choate, Hall & Stewart, Boston, MA, for Cape Cod Commission.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

These consolidated cases arise out of a dispute between the plaintiffs and officials of the Town of Barnstable, Massachusetts (the "Town"), over a telecommunications tower located within the Town. In the first action (CV 97–12531–GAO), the plaintiffs Paul P. Flynn and Sandra M. Flynn (the "Flynns") claim that the Town, acting through its Zoning Board of Appeals ("ZBA"), violated certain provisions of the Telecommunications Act of 1996 pertaining to local zoning regulations of "personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A). They also allege that the defendants' official actions deprived them of rights guaranteed them under that federal statute in violation of 42 U.S.C. § 1983. The complaint prays for injunctive and declaratory relief, as well as for compensatory damages.

In the second action (CV 98–11178–GAO), the Flynns and Airway Communications of Avon, LLC ("AirComm"), a company they own, claim that the Town wrongfully refused to grant a permit applied for by the plaintiffs so that they could perform emergency repairs to the telecommunications tower. As in the first action, the plaintiffs assert violations of the Telecommunications Act and of § 1983, and seek similar relief.

In the first action, the plaintiffs have moved for summary judgment on their claim under the Telecommunications Act, and the defendants have cross-moved for summary judgment as to both counts. In the second action, the plaintiffs have moved for a preliminary injunction. For the reasons that follow, the plaintiffs' motions in both actions are DENIED. A disputed issue of material fact

as to whether or not the Town acted "within a reasonable period of time" on the Flynns' permit and variance applications, as required by 47 U.S.C. § 332(c)(7)(B)(ii), precludes entry of summary judgment for the defendants.

### I. Factual Background

It will be helpful to set forth in some detail the historical facts out of which the current disputes arise.

### A. Prior to 1996.

In 1969 and 1970, the Cape Cod Broadcasting Company ("Cape Cod Broadcasting") was granted a special permit and a related building permit for the construction of a 220–foot high tower at 749 Oak Street in West Barnstable. There has never been a modification of the 1969/1970 permits, and no subsequent permit for work on the tower was issued between 1970 and 1996.[1] Since its construction, the tower has served as a communications tower for radio, weather, and personal wireless services providers who lease antenna space on the tower.

In 1992, the plaintiffs purchased the business and assets of Cape Cod Broadcasting, including the Oak Street property and tower. They sought to increase the height of the tower to approximately 430 feet. The Town's building commissioner at the time, Joseph Daluz, informally approved the plaintiff's construction by writing "ok," followed by his initials, on a drawing depicting the proposed tower construction.[2] Thereupon, the plaintiffs altered the tower according to their proposal without a permit from the ZBA.

### B. Events in 1996.

In early 1996, the plaintiffs sought to replace the existing tower with a new one in approximately the same location. They had discussions with the new building commissioner, Ralph Crossen, about the possibility of such a replacement. Crossen expressed

---

1. Cape Cod Broadcasting replaced the original tower in 1982 with another of greater height. Cape Cod Broadcasting did not seek, nor did the Town grant, a permit for this replacement.

2. While there was some dispute as to the authenticity of the informal approval, the defendants' insinuations that the writings are not authentic

are unsupported by the evidence. In any event, the significance of the issue may be doubted. In collateral litigation, the Massachusetts Land Court has determined that the building commissioner's informal approval did not have the effect of granting the plaintiffs permission to increase the height of the tower.

concern over the tower's height, and on March 25, 1996 informed the plaintiffs, through their attorney Myer Singer, Esq., that he could find no authorization in the Town's records granting anyone permission to use the tower above a height of 220 feet. He recommended that the plaintiffs petition the ZBA for any desired relief.

In June 1996, the legs of the tower became damaged, and the plaintiffs asked Crossen to issue an emergency permit to repair the damaged structure. Relying on the advice of an engineer who had surveyed the tower's structural damage, Crossen issued the emergency permit to repair on June 28, 1996. By August, workers had attached a temporary stabilizing brace to the tower's base.

On September 30, 1996, on the basis of additional information, Crossen notified the plaintiffs that the tower was in violation of Barnstable Zoning Ordinance §§ 3–1.4(5) and 4–4.5(2), as well as the Massachusetts Zoning Act, Mass.Gen.Laws ch. 40A, § 7. He amended the June 28 emergency permit to read that the tower could still be replaced, but the Town would not authorize any *use* above 220 feet.[3] On October 29, 1996, the plaintiffs appealed Crossen's amendment of the emergency permit to the ZBA.[4]

On November 26, 1996, the plaintiffs applied to the ZBA for both a special permit and a variance to allow them the continued use of the tower to its full height of approximately 430 feet. The ZBA scheduled a hearing on the applications for December but then reset it for January 29, 1997. Under Massachusetts law, a zoning board must issue a decision within 100 days of the submission of a request for a variance, Mass.Gen. Laws ch. 40A, § 15, and within 90 days after a public hearing on an application for a special permit. *Id.* at § 9.

## C. The Cape Cod Commission.

The Cape Cod Commission (the "Commission") is a regional planning and land use authority created to "oversee the implementation of a regional land-use policy plan for all of Cape Cod" and "to review and regulate developments of regional impact." 1990 Mass.Acts ch. 716, § 1(b). A "[d]evelopment of regional impact," or "DRI," is generally defined as "a development which, because of its magnitude or the magnitude of its impact on the natural or built environment, is likely to present development issues significant to or affecting more than one municipality." *Id.* at § 2(h). The Barnstable County Assembly of Delegates is authorized to adopt "standards and criteria" for determining whether a proposed development should be classified as a DRI. *Id.* at § 12(a). Any proposed development that meets the pertinent criteria must be referred to the Commission for review as a DRI before any municipal action can be taken to grant approval for the project. During the period of the Commission's consideration of these mandatory referrals, the local authorities' review of the matter is suspended, as are the statutory time periods governing such review. *Id.* at § 12(h). In addition, proposed developments that do not fall within the criteria warranting mandatory referral may still be considered by the Commission in its discretion. *Id.* at § 12(e). If, after consideration, the Commission approves the proposed DRI, the municipality may issue the appropriate permits. *Id.* at § 13(d), (e). If the Commission disapproves the DRI, "no further work may be done on the development." *Id.* at § 13(e).

## D. 1997 to the Present.

In early January 1997, the Barnstable County Assembly of Delegates (the "Assembly") adopted a regulation requiring mandatory DRI review by the Commission of zoning issues pertaining to towers such as the plaintiffs'. A few days later, the plaintiffs' pending applications for a special permit and a variance were referred to the Commission for mandatory review in accordance with the new standard. The Barnstable ZBA consequently suspended its consideration of the applications pending the Commission's re-

---

3. Crossen understood Massachusetts law to forbid him from demanding the dismantling of the tower because of its status as a prior non-conforming use.

4. The disposition of that appeal is not germane to the present claims.

view, and the hearing scheduled for January 29 was not held.

On August 13, 1997, the Assembly amended the DRI threshold pertaining to wireless communications towers. As a result, the Town was notified that the Commission had determined that the plaintiffs' applications were no longer subject to the mandatory referral requirement, so that the "previously suspended local review time frames start to run again." Flynn Aff.Ex. 7, Daley memo, Aug. 13, 1997.

The ZBA scheduled a hearing on the plaintiffs' applications for September, but then postponed it to November to permit further technical evaluation of the proposal. In the meantime, the Town asked the Commission to accept a discretionary referral of the matter, and on October 23, 1997, the Commission agreed to do so. The Commission notified the ZBA that because of the acceptance of the discretionary referral, the "local time clocks for review of the proposed project stopped as of October 23, 1997." Flynn Aff. Ex. 12, Lemay letter, Oct. 28, 1997.

On July 2, 1998, the Commission denied DRI approval for the tower without prejudice, because the plaintiffs, contesting the legitimacy of the Commission's review, declined to supply information necessary for a determination on the merits.

### E. The 1998 Emergency Repair Application.

In December 1997, Crossen expressed concern that the temporary repair previously done was no longer sufficient to support the tower. The plaintiffs responded on February 19, 1998, with an engineering plan designed to install an augmentation kit to the tower, in effect building another tower around the existing one so as to transfer the weight from the old to the new. On April 17, 1998, Air-Comm, the Flynns' company, filed an application for an emergency building permit to repair the tower. The Town took the position that it would issue the permit only if the plaintiffs agreed that there would be no increase in the number of tenants or appliances installed on the tower, and further that they were "installing the [augmentation] kit entirely at [their] peril." Flynn Aff.Ex. K,

Town of Barnstable letter, May 19, 1998. The plaintiffs refused to agree to what they considered the Town's illegitimate attempt to add conditions to the requested permit. Consequently, Crossen refused to issue the emergency building permit. The preliminary injunction requested in the second action would compel the Town to issue the permit.

## II. Analysis

### A. November 26, 1996 Applications for Special Permit and Variance (CV 97–12531–GAO).

The Telecommunications Act of 1996 generally preserves the authority of state and local governments over land use and zoning issues that may arise with respect to the siting of towers for personal wireless communications services, but nonetheless imposes some particular limitations on that authority. State or local governments may not prohibit the provision of personal wireless services. 47 U.S.C. § 332(c)(7)(B)(i)(II). To the extent that they act within their authority to regulate such matters, they may "not unreasonably discriminate among providers of functionally equivalent services." *Id.* at § 332(c)(7)(B)(i)(I). In addition, local governments are affirmatively required to "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed." *Id.* at § 332(c)(7)(B)(ii).

The Act does not define what a "reasonable time" might be. Under Massachusetts law, however, a local zoning authority must issue decisions on applications for special permits and variances within certain prescribed time periods. Mass.Gen.Laws ch. 40A, §§ 9, 15. Indeed, if the local authority does not act within the prescribed time limits, the applied for permit or variance is deemed constructively granted. *Id.* These provisions imply, the plaintiffs say, that delay beyond the prescribed periods is unreasonable under Massachusetts law. They further argue that what is unreasonable delay under applicable state law must, as a matter of law, be considered unreasonable delay under the

Telecommunications Act.[5] Because the ZBA has not acted within the time prescribed under state law, the plaintiffs sum up, it has not acted "within a reasonable period of time" in violation of the requirement of § 332(c)(7)(B)(ii), and they are entitled to summary judgment to that effect.

The necessary premise that the ZBA has not acted within the time limits applicable under state law is true, however, only if the running of the applicable time periods has not been suspended by the discretionary referral of the issue to the Commission. The Town and the Commission take the position that a discretionary referral suspends the "local time clock" just as a mandatory referral does. The plaintiffs contend that this proposition is in error: that a discretionary referral does not suspend the running of the clock, and as a consequence the clock has run out on the defendants' opportunity to deny the applications.[6]

■ Resolving the question requires construing the Cape Cod Commission Act, 1990 Mass.Acts ch. 716, in the absence of directly controlling legal authority from the state courts. In such a circumstance, the task of a federal court is to "determine what the outcome of the case must be unless the state court of last resort chooses to overrule or modify its decisions most nearly in point with respect to the precise issues presented by the pending case." *RLI Ins. Co. v. General Star Indem. Co.*, 997 F.Supp. 140, 143 (D.Mass.1998). In other words, the federal court does not approach the matter guided by its own lights, but by the signals that may be discerned from the body of state precedents.

In *Crocker v. Martha's Vineyard Comm'n*, 407 Mass. 77, 551 N.E.2d 527 (Mass.1990), the Supreme Judicial Court was called upon to decide whether local zoning action should be held in abeyance while review of a DRI was conducted by the Martha's Vineyard Commission, a body similar to the Cape Cod Commission. The pertinent statute was silent on the question. The court held that the regional review would be effectively nullified if the local authorities were to be bound to act within the generally prescribed time periods, despite the pendency of review by the Commission. To give effect to the scheme of regional review, the local time periods would be considered tolled while the regional commission considered the matter. *Id.* at 530.

The case does not directly control this dispute because, unlike the statute at issue in *Crocker*, the Cape Cod Commission Act is not entirely silent about tolling local time periods during review. It expressly provides for such tolling during the Commission's review of a *mandatory* referral:

> The suspension of municipal agency review shall extend all constructive grant periods for municipal agencies for a period equal to the duration of commission review, such periods to resume running after a final commission decision is rendered.

1990 Mass.Acts ch. 716, § 12(h). There is no such tolling provision expressed in the portion of the Act that authorizes discretionary referrals. *Id.* at § 12(e).

The plaintiffs argue that the drafters of the statute plainly provided for tolling in one circumstance and just as plainly omitted to provide for it in a separate, but closely related, circumstance. The omission should not be held accidental or unintentional, the plaintiffs say, and it should be respected. It might be a wiser policy to toll the time periods for all referrals, but the drafters of the statute evidently chose otherwise, and the statute cannot be redrafted in court to make it "better."

■ The argument is a respectable one, and if the matter were to be decided in accordance with prevailing principles for interpreting federal statutes, it might be accepted. *See, e.g., Mertens v. Hewitt Assocs.,*

---

5. In making this argument, the plaintiffs have the benefit of an accordant statement in the legislative history of § 704 of the Telecommunications Act of 1996. On the very point, the Conference Committee observed: "If a request for placement of a personal wireless service facility involves a zoning variance or a public hearing or comment process, the time period for rendering a decision will be the usual period under such circumstances." 142 Cong.Rec. H1078, at H1134.

6. The parties entered into some agreements extending the time periods, but even with the extensions the periods have expired.

508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (interpreting the Employee Retirement Income Security Act of 1974) ("ERISA"). The task, however, is to decide the matter as the Massachusetts courts would, and it is this Court's judgment that the Massachusetts courts would interpret the statute to require tolling for discretionary referrals as well as mandatory. There are a number of reasons for this conclusion.

First, the anomaly in the regulatory scheme that the Supreme Judicial Court undertook to repair in *Crocker* exists here as well. If the local time periods are not tolled during a discretionary review, the same dilemma arises. The local authority either must act before its time limit expires or cause the constructive grant of the permit applied for. In either circumstance, the local decision may well come before the Commission's review has been completed. The court held in *Crocker* that such a consequence could not have been what the legislature intended, and it seems likely that it would reach a similar conclusion if asked to resolve the issue presented here.

Second, the plaintiffs' proposed interpretation raises problems of potential disharmony with other provisions of the Cape Cod Commission Act. For instance, if a DRI is approved by the Commission, then the municipality may issue the requested permit. But if the DRI is disapproved by the Commission, the municipality may not issue the permit. 1990 Mass.Acts ch. 716, § 13(e). The Commission's approval thus appears to be a kind of condition precedent to municipal approval, making it not just a desired element in the statutory scheme, but an intended necessary one. This consideration reinforces the impulse to apply the *Crocker* approach to harmonizing the working of the statutory design.

Third, the Commission itself has construed its enabling act to require the tolling of local time periods during review of discretionary referrals, notwithstanding the absence of explicit authorization in the language of the Act. The Commission took that position in

1997 with respect to the referral at issue, and it reasserts it by way of its *amicus* brief here. An agency's interpretation of its statute is commonly given deference by the Massachusetts courts. *See Gateley's Case,* 415 Mass. 397, 613 N.E.2d 918, 919 (Mass.1993); *Cleary v. Cardullo's, Inc.,* 347 Mass. 337, 198 N.E.2d 281, 286 (Mass.1964).

Fourth, the Supreme Judicial Court has frequently solved problems of interpretation by looking past troublesome statutory language to the evident and sensible purpose of the statute. *See, e.g., 1010 Memorial Drive Tenants Corp. v. Fire Chief of Cambridge,* 424 Mass. 661, 677 N.E.2d 219, 221 (Mass. 1997) (courts will interpret comprehensive legislative scheme in a way that is "faithful to the basic designs and purposes of the Legislature," notwithstanding "gaps in the statutory provisions") (internal quotation marks and citations omitted); *Lexington v. Bedford,* 378 Mass. 562, 393 N.E.2d 321, 327 (Mass.1979) ("a literal construction [of a statute] will not be adopted when that construction would be inconsistent with other material provisions of the statute and would defeat the aim and object of the legislation").

■ For these reasons, this Court concludes that the premise of the plaintiffs' summary judgment motion is faulty. The defendants have not failed to act on the pending applications within the time limits set by Massachusetts law, because those limits have been tolled pending the Commission's consideration of the discretionary referral of the DRI.[7] Consequently, it cannot be said as a matter of law that the defendants failed to act "within a reasonable time" as required by § 332(c)(7)(B)(ii), and the plaintiffs' motion for summary judgment under Count I of the Amended Complaint must be denied.

It does not follow, however, that since the defendants' consideration was not *un* reasonable as a matter of law, it must necessarily have been reasonable. Circumstances might readily be imagined in which a local authority might delay consideration of an application for a permit unreasonably even though the

---

**7.** The plaintiffs have also objected that the discretionary referral was untimely, *see* 1990 Mass.Acts ch. 716, § 12(j), and therefore the Commission

never properly acquired jurisdiction. The facts in the record do not support this assertion.

outside time limits under state or local law had not yet expired. The matter is a factual one, not to be resolved on the defendants' present motion for summary judgment that comes so early in the case. Their motion, likewise, is denied.

B. *The 1998 Emergency Permit Application (CV 98–11178–GAO).*

In the second action, the plaintiffs claim that the defendants' refusal to issue an emergency permit to allow repair of the tower violates both the Telecommunications Act of 1996, 47 U.S.C. § 332(c), and the Civil Rights Commission Act of 1983, 42 U.S.C. § 1983. They have moved for a preliminary injunction requiring the Town to grant them authorization to proceed with emergency repairs to the tower.

■ In order to succeed on a motion for a preliminary injunction, a party must prove: "(1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; and (4) a fit (or, at least, a lack of friction) between the injunction and the public interest." *Equal Employment Opportunity Comm'n v. Astra, USA, Inc.,* 94 F.3d 738, 742 (1st Cir.1996). The most critical of these four factors is a demonstration that the moving party is reasonably likely to succeed on the merits of a claim on which the prayer for an injunction is based. *Philip Morris, Inc. v. Harshbarger,* 159 F.3d 670, 673 (1st Cir.1998) (likelihood of success is the "touchstone of the preliminary injunction inquiry"); *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 16 (1st Cir.1996) (likelihood of success is the "main bearing wall of the four-factor framework"); *Weaver v. Henderson,* 984 F.2d 11, 12 (1st Cir.1993) (likelihood of success is the "*sine qua non* of the formulation").

■ The plaintiffs argue that the Town's delay and ultimate refusal to issue an emergency permit to repair the tower in the spring of 1998 violated the Telecommunications Act in three ways. First, they claim it amounted to a prohibition of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). Their claim in this re-spect rests on the proposition that denying a particular provider's request is equivalent to "prohibiting" that provider's services. However, the portion of the Act invoked does not pertain to individual decisions on particular applications, but rather to a town's "general ban or policy" prohibiting all personal wireless services. *See Cellco Partnership v. Town Plan and Zoning Comm'n of Farmington,* 3 F.Supp.2d 178, 184–85 (D.Conn. 1998); *AT&T Wireless PCS, Inc. v. City Council of City of Virginia Beach,* 979 F.Supp. 416, 427 (E.D.Va.1997). There is no allegation (or evidence) of a general ban.

■ Next, the plaintiffs say that the Town delayed unreasonably in acting on the application for the emergency permit, in violation of § 332(c)(7)(B)(ii). The plaintiffs submitted the application on April 17, 1998. Compl.Ex. B. Some negotiations and correspondence followed concerning conditions that the Town wanted the plaintiffs to acknowledge. When the negotiations failed, Crossen wrote to the plaintiffs on June 18, 1998, denying the application. Crossen Aff.Ex. 3. In all the circumstances, a "delay" of two months from application to denial does not seem unreasonable.

■ The plaintiffs also claim that the Town's attempt to coerce the plaintiffs into agreeing to improper conditions as a price for the permit violated § 332(c)(7)(B)(iii), which requires municipal decisions denying requests such as theirs to be "in writing and supported by substantial evidence contained in a written record." Crossen's letter conveying the decision to the plaintiffs satisfied the requirement that the decision be in writing. In it he identified the reasons the Town would not issue the permit:

> ·The reason for this denial is your insistence that you intend to add new uses to the tower after repairs; something that, in your case, is not lawful due to the nature of your special permit. In order to be eligible for a building permit an application must be in conformance with zoning and the building code. To be in conformance with zoning, the intended uses (based on your correspondence and calls from companies seeking space that have talked to you) must be considered.

Crosson Aff.Ex. 3. In other words, the basis for the denial was the plaintiffs' unwillingness to commit not to add new users to the tower. That unwillingness was a matter of written record. It does not appear likely that the plaintiffs can establish a violation of § 332(c)(7)(B)(iii).

It seems that the true ground of the plaintiffs' grievance is that the Town was conditioning the grant of the emergency permit on concessions it was not entitled to extract. That may or may not provide a basis for relief under state law, but it does not run afoul of the limited federal regulation of this area.

In sum, the plaintiffs have fallen far short in their effort to demonstrate a likelihood of success on the merits of their claims. Their failure in that respect similarly condemns their request for an injunction to unsuccess.

### Conclusion

For the foregoing reasons, the cross-motions for summary judgment are DENIED. The plaintiffs' motion for a preliminary injunction is DENIED.

It is SO ORDERED.