.EDMUND J. WACHTER, JOHN KRONMILLER AND RUXTON M. RIDGELY, THE ELECTION SUPER-VISORS OF BALTIMORE CITY,

*vs.*

JAMES McEVOY.

*Mayor of Baltimore City: Qualifications for office; member of Police Board not eligible during term for which he was appointed; "term of office"; resignation during term. Statute: Repeal by implication.*

Chapter 512 of the Acts of 1914, repealing section 16 of the City Charter (Acts of 1898, Chapter 123), and amending the law as to the length of time of residence in the City of Baltimore necessary to render eligible a candidate for the office of Mayor for that city, and omitting the requirement of his having been assessed with property and of having paid taxes thereon for two years preceding the date of the election at which he is a candidate, does not have the effect of repealing Chapter 15 of the Acts of 1900 (which it does not mention), or of repealing any of the former statutes declaring that no member of the Board of Police Commissioners of Baltimore City shall be eligible to an election or appointment to the office of Mayor during the term for which he was appointed to such board.

pp. 405-406

The term of office for which a member of the Board of Police Commissioners is appointed is not ended by his resignation therefrom; and the fact that a member of such board resigns

before the expiration of the time for which he was appointed does not render him eligible for the office of Mayor of Baltimore City.                                    pp. 407-408

Repeals of statutes by implication are not favored.        p. 406

It is only when they are clearly irreconcilable and not susceptible of any such fair interpretation as will admit of their standing together that such repeal will be declared.        p. 406

It is the function of courts to interpret legislation, and not to supply its omissions.                                    p. 407

*Decided February 17th, 1915.*

Appeal from the Baltimore City Court.   (GORTER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and CONSTABLE, JJ.

*David M. Newbold, Jr.,* and *Enos S. Stockbridge,* for the appellants.

By special leave of the Court of Appeals, *Charles J. Bonaparte* and *J. Southgate Lemmon,* on behalf of the Baltimore Reform League, filed a brief for the appellants.

*Joseph C. France* and *Edwin G. Baetjer,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellants on this record constitute the Board of Supervisors of Elections of Baltimore City.

On the sixth day of January, 1915, the appellee filed in the Baltimore City Court a petition in which he prayed that a writ of mandamus be issued against the appellants

commanding them to receive his certificate of candidacy as a candidate for the nomination by the Republican party for the office of Mayor of the City of Baltimore, and also commanding them to have printed upon the ballots to be used or voted by affiliated voters of said Republican party in said primary election of said party to be held in the City of Baltimore on the sixth day of April, 1915, the name of your petitioner, James McEvoy, as a candidate for the Republican nomination to the office of Mayor of the City of Baltimore. On the 7th day of January, 1915, the Court passed an order directing the writ to issue as prayed. From that order this appeal was taken.

The first paragraph of the petition alleged that on the sixth day of April, 1915, there would be held in the City of Baltimore a primary election at which the duly qualified voters affiliated with the Republican party would nominate a candidate for the office of Mayor of the City of Baltimore; and that the petitioner, being duly affiliated as a member of the Republican party, and being desirous of becoming a candidate for said office in said primary election, did, on the 24th day of December, 1914, present to the respondents, the Board of Supervisors of Elections of Baltimore City, his certificate of candidacy for said office in the form required by said board and in conformity with the provisions of the election laws of the State of Maryland, together with the sum of one hundred dollars, as provided by law, in order that his name might be printed as a candidate for the said office of Mayor upon the official ballot to be used by the voters of the Republican party at said primary election; that the Board of Supervisors of Elections refused to accept his certificate of candidacy, and refused to have his name printed on the ballots to be used at said primary election, and returned to him his certificate and said sum of one hundred dollars, averring that the petitioner was not eligible to become a candidate for said office or entitled to have his name printed on said ballot, for the reason that he had formerly, namely, until December 23, 1914, been a member of the

Board of Police Commissioners of Baltimore City. That the appellants based their refusal on the provisions of Chapter 15 of the Acts of 1900, re-enacting section 740 of Article 4 of the Code of Public Local Laws, entitled Baltimore City, sub-title Police Commissioners, which provides, among other things, that: "None of said Commissioners shall be eligible to an elective or appointed office during the term for which he was appointed, except under the militia laws of the State, or where the qualifications for such office are prescribed by the Constitution." He filed with his petition, as a part thereof, a copy of his certificate of candidacy and a copy of the ruling or opinion of the Board of Supervisors of Elections declining to accept the certificate.

In the second paragraph of the petition it is alleged that the petitioner had previously served as a member of the Board of Supervisors of Elections of Baltimore City, and that on the second day of January, 1914, he qualified as a member of the Board of Police Commissioners of Baltimore City, having been appointed to that office by the Governor of the State of Maryland, to serve until the second Monday of May, 1914, in the place of Morris A. Soper, who had resigned to become Chief Judge of the Supreme Bench of Baltimore City; that in the month of February, 1914, and during the session of the Legislature, the petitioner was appointed a member of the Board of Police Commissioners by the Governor for the term of two years, beginning on the first Monday of May, 1914; such appointment having been duly confirmed by the Senate. That he qualified as a member of said board on the fourth day of May, 1914, and continued as such until the 23rd day of December, 1914, when the Governor accepted his resignation and appointed his successor, who has qualified and is now serving as a member of said board.

The third paragraph alleged that the petitioner possessed all the qualifications to be possessed by a candidate for the office of Mayor of the City of Baltimore prescribed by Chapter 512 of the Acts of 1914.

The fourth paragraph alleged that he is eligible for the office of Mayor of the City of Baltimore, and that the refusal of the Board of Supervisors of Elections to receive his certificate of candidacy and his payment of one hundred dollars, and their rejection of the same, and their refusal to place his name on the official ballot to be voted at said primary election, constitute a violation of their duty in the premises.

The appellants answered the petition and admitted the allegations contained in the first and second paragraphs thereof; they admitted the allegation contained in the third paragraph of the petition "in so far as it alleges that the said petitioner possesses the specific qualifications for the office of Mayor of Baltimore as prescribed by Chapter 512 of the Acts of 1914 of the General Assembly, mentioned in said paragraph, but in view of section 740 of Article 4 of the Code of Public Local Laws of Maryland, as set out in paragraph one of said petition, deny that the said petitioner is eligible to the office of Mayor of Baltimore." They denied the allegations contained in the fourth paragraph of said petition, and denied that the petitioner was eligible to the office of Mayor of Baltimore, and affirmed that their refusal to receive the certificate of candidacy, and its accompanying deposit of one hundred dollars, and their rejection of the same, and their refusal to place his name on the official ballot to be voted at the primary election, is not a violation of their duty, but was fully justified in law. The petitioner demurred to the answer, and the demurrer was sustained, and the appellants declining to amend their answer the order appealed from was passed.

The Act of 1898, Chapter 123, known as the New City Charter, passed under the power contained in the Eleventh Article of the Constitution, prescribed the qualifications for the office of Mayor of Baltimore City, in this language contained in section 16 of that Act: "The inhabitants of the City of Baltimore qualified to vote for members of the House of Delegates shall, on the Tuesday next after the first Monday in May, eighteen hundred and ninety-nine, and on the

same day and month in every fourth year thereafter, elect
by ballot a person of known integrity, experience and sound
judgment, over twenty-five years of age, a citizen of the
United States, and five years a resident of said City next
preceding the election, and assessed with property in 'said
City to the amount of two thousand dollars, and who has
paid taxes thereon for two years preceding his election, to
be Mayor of the City of Baltimore; but the Mayor chosen
at the first election under this section shall not enter upon
the discharge of the duties of the office until the expiration
of the term for which the present Mayor was elected; unless
the said office of Mayor shall become vacant by death, resig-
nation, removal from the State or other disqualification of
the present Mayor."

By sections 740 to 764, inclusive, of the same Act, pro-
vision was made for the organization of the police force of
Baltimore City, and for the election of a Board of Police
Commissioners for the City of Baltimore. In section 741
the following disqualification for office was imposed upon
the Police Commissioners: "And neither of said Commission-
ers shall be eligible to an elective or appointed office during
the term for which he has been elected, except under the
militia laws of the State."

It would seem to be obvious that it was the intention of
the Legislature by the language quoted from section 741 to
limit and qualify, to the extent therein stated, the qualifica-
tions for Mayor specified in section 16, and that the eligibil-
ity of a person for the office of Mayor was to be determined
by section 16 and section 741, and that a person disqualified
under either section was ineligible to that office. Thus con-
strued it is manifest that there is no repugnancy or incon-
sistency between the sections, and that they may stand
together, as the Legislature evidently intended they should.

The Act of 1900, Chapter 15, repealed and re-enacted
sections 740 and 741 of the Act of 1898, Chapter 123. It
provided for the appointment by the Governor of a Board
of Police Commissioners for the City of Baltimore instead

of election "by the joint meeting of the two houses of the
General Assembly" as provided by the Act of 1898. It
changed the term of office of the Police Commissioners, but
continued the disqualification contained in section 741 of
the Act of 1898. The provisions of the Act with respect to
these subjects are here transcribed: "None of said Commis-
sioners shall be eligible to an elective or appointed office dur-
ing the term for which he was appointed, except under the
militia laws of the State, or where the qualifications for such
office are prescribed by the Constitution." The provision
that a Police Commissioner was eligible to an office whose
qualifications were prescribed by the Constitution was
unnecessary, as it was not within the power of the Legisla-
ture, where the Constitution had defined the qualification
of an officer, to change, or superadd new or additional qual-
ifications. So it may be said that the provisions as to the
disqualifications of Police Commissioners contained in the Act
of 1900, Chapter 15, are legally and substantially identical
with those stated in section 741 of the new charter.

The Act of 1914, Chapter 512, repealed section 16 of the
City Charter (Ch. 123 of the Acts of 1898), which prescribed
the qualifications for the office of Mayor. The only change
made in the prior Act was to require a residence of ten
years in the City instead of five years, and to render eligible
any person "who has hitherto held elective, executive, or
legislative office under the government of the United States,
or the State of Maryland, or the City of Baltimore, to be
Mayor of the City of Baltimore," irrespective of whether he
was assessed with property and paid taxes thereon for two
years preceding his election. This Act makes no reference
to the Acts of 1900, Chapter 15. It is entitled an Act to
repeal section 16, Chapter 123 of the Acts of the General
Assembly of Maryland of 1898, title "Charter," sub-title
"Mayor," and to re-enact the same with amendments. It
left the Act of 1900 in full force and is consistent with it,
as section 16 of Chapter 123 of the Acts of 1898 was con-
sistent with section 741 of the same Act. They are cumu-

lative acts upon the same subject, and must be read together to determine the appellee's eligibility for the office of Mayor.

We cannot, therefore, agree with the contention that Chapter 15 of the Acts of 1900, in so far as the appellee may be disqualified thereunder, was repealed by Chapter 512 of the Acts of 1914.

Repeal of a former by a subsequent statute, by mere implication, is never favored by the courts, and it is only when they are clearly irreconcilable and not susceptible of any such fair interpretation as will allow of their standing together, that such repeal will be declared. *Cumberland* v. *Magruder,* 34 Md. 381; *Snowden* v. *State,* 69 Md. 203; *McCracken* v. *State,* 71 Md. 150; *Beard* v. *State,* 74 Md. 130.

The remaining question is this: Is the petitioner under the admitted facts disqualified for the office of Mayor under the Acts of 1900, Chapter 15? It is admitted that Mr. McEvoy was appointed and qualified for a full term as one of the Police Commissioners of Baltimore City—his term beginning on the first day of May, 1914, and that he entered upon the discharge of the duties of the office and that he resigned the office of December 23, 1914, and on the following day tendered to the appellants his certificate of candidacy and the sum of one hundred dollars, as stated in the petition. The Act provides that: "Each of said Commissioners shall be appointed for two years, and their term of office shall commence on the first Monday of May next ensuing their appointment and shall hold office until their respective successors are appointed and qualified." The *term* for which Mr. McEvoy was appointed is accurately defined by the words of the Statute. The language employed is clear and explicit. It declares that the Police Commissioners shall be appointed for *two years.* It fixes the beginning of their terms, and declares that they "shall hold office until their respective successors are appointed and qualified." It is, therefore, clear that the term of office for which Mr. McEvoy was appointed was for two years at least, and was still

further to continue until the happening of a distinct and. definite event, viz: The appointment and qualification of his successor.    After having thus fixed the duration of the term the Act declared that: "None of said Commissioners shall be eligible to an elective or appointed office *during the term for which he was appointed,* except under the militia laws of the State, or where the qualifications for such office are prescribed by the Constitution.

It is said in *Smith* v. *State,* 66 Md. 215, that: "Whatever latitude may, at one time, have been assumed by courts in the construction of statutes, the more recent cases have established the rule that when the language of a legislative enactment is clear and unambiguous, a meaning, different from. that which the words plainly imply, cannot be judicially sanctioned.    Even when a Court is convinced that the Legislature really meant and intended something not expressed by the phraseology of the Act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity.    As was said by LORD DENMAN, in *Green* v. *Wood,* 7 Ad. & El. (N. S.), 185: "Those who used the words thought they had effected the purpose intended. But we, looking at the words as judges, are no more justified in introducing that meaning than we should be if we added any other provision.    We can do no more than give such a meaning as the words authorize."    The Supreme Court of Ohio, in *Woodbury* v. *Berry,* 18 Ohio, 462, emphatically say: "It is our legitimate function to interpret legislation, but not to supply its omissions."    And the doctrine in all the States seems to be well established, and it is now uniformly held that if the language of a statute is plain and unambiguous there is no room for construction, there being nothing to construe.    *United States* v. *Ragsdale,* 1 Hempstead, 497; *Bosley* v. *Mattingly,* 14 B. Mon. 89.

The term for which Mr. McEvoy was appointed was for two years.    That term was not ended by his resignation. The admitted facts bring him within the disqualifying terms of the statute.    The office of Mayor is an elective office.

and the petitioner is asking to become a candidate for the office of Mayor "during the term for which he was appointed" Police Commissioner. He is, therefore, ineligible for that office by the plain and unambiguous terms of the Act. It is earnestly insisted that the disqualification is limited to the *term of actual service,* but the statute does not so limit it. That construction would be a narrow one, and would fail to give any effect to the phrase "during the term for which he was appointed." If the Legislature had intended to limit the disqualification to the time of actual service or to the period of actual incumbency, it would have so stated and not have used language which extended the disqualifications to the entire period of the petitioner's appointment as Police Commissioner.

The reasons which induced the Legislature to impose this disqualification during the term need not be discussed. Some reasons, suggested from a consideration of the history of the police force of Baltimore City prior to the Acts of 1860, Chapter 7, and the subsequent legislation upon the subject, have been urged upon the Court, but the reasons or motives which actuated the Legislature in imposing the prohibition become immaterial in view of the plain provisions of the Act.

The high character and valuable public service of Mr. McEvoy, are conceded, but we are, for the reasons stated, constrained to hold that he is ineligible for election to the office of Mayor of Baltimore, and accordingly the order appealed from must be reversed.

> *Order reversed and petition dismissed, with costs to the appellants.*