GEORGE K. RUGG & another[1] *vs.* TOWN CLERK OF ARLINGTON & another.[2]

Middlesex.    October 4, 1973. — November 7, 1973.

Present:   TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Municipal Corporations,* Officers and agents. *Arlington.*

St. 1952, c. 503, "An Act establishing a town manager form of government for the town of Arlington," § 9, as amended by St. 1956, c. 634, § 2, which provides that a "member of . . . the finance committee shall during the term for which he was . . . appointed, be ineligible . . . to hold any other town office, except the office of town meeting member," did not prevent a former finance committee member, who was appointed in 1971 for a three year term, but who was removed in February, 1973, for failure to attend three consecutive committee meetings, from being eligible to be a candidate for selectman at the annual town election held in March, 1973. [266-269]

PETITION for a writ of mandamus filed in the Superior Court on February 12, 1973.

The case was heard by *Zarrow, J.*

*Michael J. Monahan* for the intervener John P. Donahue.

*Walter H. McLaughlin, Jr. (Bruce Oravec* with him) for the petitioners.

*Joseph H. Purcell,* Town Counsel, for the Town Clerk of Arlington, submitted a brief.

─────────

[1] William E. Shea, a registered voter.

[2] John P. Donahue.

BRAUCHER, J.    Statute 1952, c. 503, "An Act establishing a town manager form of government for the town of Arlington," § 9, as amended by St. 1956, c. 634, § 2, provides in part: *"Multiple Officers.* — A member of the board of selectmen, or of the school committee, or of the finance committee shall, during the term for which he was elected or appointed, be ineligible either by election or appointment to hold any other town office, except the office of town meeting member."

A citizen of Arlington is appointed to the finance committee in 1971 for a term of three years. In February, 1973, he is removed for failure to attend three consecutive meetings. Is he eligible to be a candidate for selectman at the annual town election held on March 3, 1973? The town counsel said No, relying on our decision in *Wood* v. *Election Commrs. of Cambridge,* 269 Mass. 67 (1929). A Superior Court judge ruled Yes. We agree with the judge.

The judge filed a document entitled "Findings, Rulings and Order for Judgment," and adopted it as a report of material facts. We summarize the facts shown by his findings and the exhibits. The petitioners sought a writ of mandamus to direct the town clerk to place the name of the petitioner Rugg on the town ballot as a candidate for selectman. Donahue, a candidate for selectman, was allowed to intervene. Rugg was appointed to the finance committee on June 10, 1971. Under art. 8, § 1, of the town by-laws, his term was to expire on the seventh day after the final adjournment of the annual town meeting in 1974. On February 13, 1973, pursuant to art. 8, § 3, of the town by-laws, he was duly removed from the finance committee for failure to attend three consecutive meetings. He seasonably filed nomination papers and was otherwise duly qualified to run for the office of selectman. If he and another candidate similarly situated were ruled off the ballot, only two candidates would remain for the two selectman positions to be filled.

An order for judgment was entered on February 20, 1973, directing the town clerk to place the name of the petitioner Rugg on the ballot as a candidate for selectman in the annual

town election on March 3, 1973, and the intervener Donahue appealed. On February 22, 1973, a single justice of this court suspended the order pending appeal and ordered that the ballots for the election not contain the name of the petitioner Rugg as a candidate for selectman.

We are informed by counsel that on February 27, 1973, a judge of the United States District Court for the District of Massachusetts denied a petition by Rugg for an injunction, stating that it would abstain pending determination of the present case by us. We are also informed that the petitioner Rugg organized a "sticker" campaign, and that he received the second highest number of votes of the four candidates for two positions. The intervener Donahue ran fourth. Finally, we are informed that the town clerk, under instructions of the town counsel, does not intend to swear in any of the candidates pending our determination.

1. In *Wood* v. *Election Commrs. of Cambridge,* 269 Mass. 67 (1929), a member of a school committee was denied the right to be a candidate for mayor in circumstances similar to those of the present case. The governing statute, G. L. c. 43, § 32, as it then read,[3] was very similar to the Arlington statute here in issue. It did not appear that the petitioner in the *Wood* case had ceased to be a "member" of the school committee, but the court clearly expressed the opinion that termination of membership would not affect the operation of the statute: "A member of the school committee who resigns or otherwise ends his service before the expiration of the term for which he was elected is as completely within its prohibition as one continuing his service to the end of the term." *Id.* at 68.

The petitioners seek to distinguish the *Wood* case on several highly technical grounds, but we have little doubt that those who decided that case would have regarded it as controlling here. Where the Legislature employs language

[3] ". . . No member of the school committee, except the mayor, shall [during the term for which he is elected], hold any other office or position the salary or compensation for which is payable out of the city treasury. . . ." By St. 1949, c. 318, the words in brackets were deleted and the words "while a member thereof" were substituted. By St. 1970, c. 24, the words "except the mayor" were deleted and "in the school department" was inserted after the words "any other office or position."

which has previously been judicially construed, it is ordinarily presumed to have adopted the judicially declared meaning. See *Randall's Case,* 331 Mass. 383, 386 (1954).

The Arlington statute, like the *Wood* statute, is on its face primarily a prohibition against holding two offices at the same time. It may be doubted that it would occur to a legislative draftsman or reader that it would carry the meaning given it in the *Wood* case. That doubt is reinforced when the provision is but one part of a comprehensive town manager statute for the town. Moreover, the force of the usual presumption is weakened by the fact that the *Wood* statute was amended to overrule that decision (see fn. 3); amendment in such cases may well be an assertion of the original intention rather than a manifestation of changed intention.

Nevertheless, we should feel uncomfortable in reconsidering matters considered in the *Wood* case in the absence of the petitioners' constitutional attack on the *Wood* case as resulting in a denial of equal protection of the laws. This court in the *Wood* case held that the statute as interpreted violated no provision of the Massachusetts Constitution. We referred to "reasonable regulations imposed by law" and to an office "voluntarily accepted" upon conditions, and said, "Broad considerations of public policy well may be thought to support such a restriction upon the political activities of those charged with the delicate and important responsibilities of official supervision of the public schools." 269 Mass. at 69-70. We did not purport to decide any Federal constitutional question.

Since that time we have been instructed that statutes which tend to produce inequality among voters may not be sustained if they can be shown to have merely "some rational basis," — they must rather withstand "a more rigid standard of review," and that "the rights of voters and the rights of candidates do not lend themselves to neat separation . . .." *Bullock* v. *Carter,* 405 U. S. 134, 142-143 (1972). See *Tsongas* v. *Secretary of the Commonwealth,* 362 Mass. 708, 722 (1972) (dissenting opinion). The opinion in the *Wood* case, like other opinions of the time on similar issues, did not

articulate the considerations of public policy thought to support the restriction. See, e.g., *Wachter* v. *McEvoy,* 125 Md. 399, 408 (1915); annotations, 5 A. L. R. 117 (1920), 40 A. L. R. 945 (1926). Counsel in the present case have been unable to supply any very convincing rationale for the restriction.

The opinion in the *Wood* case does suggest that there may have been a legislative purpose to penalize a person who gives up an office before completing its stated period of service. Whether such a purpose satisfies the "more rigid standard of review" presents a constitutional question sufficiently serious, in our view, to justify reopening what might otherwise be a settled question of interpretation. It is our duty, if reasonably possible, so to interpret the statute as to avoid unnecessary decision of serious constitutional questions. See *First Natl. Bank* v. *Attorney Gen.* 362 Mass. 570, 577 (1972) (opinion of Tauro, C.J.), *id.* at 594-596 (opinion of Quirico, J.).

2. Free of the precedential force of the *Wood* case, which arose in a different constitutional context, we have little difficulty with the interpretation of the Arlington statute. It forbids a "member" of the finance committee to "hold" the office of selectman. When the officer resigns or is removed, he ceases to be a "member" and is not subject to the prohibition. Thus the statute is confined to its obvious purpose of preventing one person from holding two of the specified offices at the same time. This reading fits the next sentence of the same section, which permits dual office-holding for other offices.[4] Contrast art. 65 of the Amendments to the Massachusetts Constitution, which applies to a "person elected to the general court" rather than to a "member."

This interpretation does not deprive of meaning the words "during the term for which he was elected or appointed." Compare *Wachter* v. *McEvoy,* 125 Md. 399, 408 (1915); *Ellis* v. *Lennon,* 86 Mich. 468, 473-474 (1891). Under G. L. c. 41,

---

[4] "Any person appointed by the town manager to any town office under the provisions of this act or of any general or special law shall be eligible during the term of said office to appointment to any other town office, except that the town accountant shall not be eligible to hold the position of town treasurer and collector."

§§ 1 and 107, and St. 1952, c. 503, § 3, members of the board of selectmen or school committee serve during the terms fixed by law and until their successors are qualified. Similarly, under St. 1952, c. 503, § 33, and art. 8, § 1, of the Arlington by-laws, members of the finance committee serve for terms of three years and "continue to act as such until their successors are appointed." Thus a member may hold over after his term has expired, but the period of holdover is not "during the term for which he was elected or appointed." Hence the statutory ineligibility for other town office does not apply during the period of holdover.[5]

3. The judge was therefore correct in ruling that the petitioner Rugg was eligible to hold the office of selectman after he was removed from the finance committee, and the order appealed from was correct at the time it was entered. A new judgment must now be entered in the trial court taking account of intervening events. See *Vigoda* v. *Superintendent of Boston State Hosp.* 336 Mass. 724, 726 (1958); *Carilli* v. *Hersey,* 303 Mass. 82, 84 (1939); *Capp* v. *Chamberlain Real Estate, Inc.* 355 Mass. 58, 61-62 (1968).

The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[5]By art. 8, § 4, of the town by-laws, however, no person holding either elective or appointive town office other than town meeting member is eligible to serve on the finance committee.