JEAN M. BEELER, administratrix, vs. WILLIAM S. DOWNEY & another.[1]

Bristol. April 8, 1982. — November 12, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Medical Malpractice,* Tribunal. *Negligence,* Medical malpractice. *Evidence,* Determination of medical malpractice tribunal.

At the trial of an action for medical malpractice the judge did not err in excluding from evidence the medical malpractice tribunal's "determination" under G. L. c. 231, § 60B, that the plaintiff's offer of proof was sufficient to raise a question of liability appropriate for judicial inquiry, inasmuch as the tribunal's "decision," declared admissible by § 60B, fifth par., refers in context only to a decision by the tribunal to appoint an impartial expert witness. [613-618]

CIVIL ACTION commenced in the Superior Court Department on July 5, 1979.

The case was tried before *Byron, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*James B. Krasnoo* for the plaintiff.

*John J. McQuade* for the defendants.

LIACOS, J. The plaintiff brought this action as administratrix of the estate of her deceased infant daughter. Her complaint alleged that her daughter's death was the result of respiratory suppression and other injuries proximately caused by the negligence of the defendants.

At the medical malpractice tribunal hearing held pursuant to G. L. c. 231, § 60B, the plaintiff submitted an offer of proof consisting of the following: an affidavit by her; a file review prepared for her attorney by a Dr. Baker, whose cur-

---

[1] Pediatric Associates of New Bedford, Inc.

riculum vitae was included; abstracts of the birth and death records of her daughter; portions of hospital records, including a report of death; a postmortem report; a provisional anatomical diagnosis; office visit notes prepared by one of the defendants, Dr. Downey; and excerpts from the product information section of the Physician's Desk Reference as to the three drugs prescribed by Dr. Downey for the child.

After a hearing on December 13, 1979, the tribunal determined, in the words of the statute, that "the offer of proof and the evidence, if properly substantiated, is sufficient to raise a legitimate question of liability appropriate for judicial inquiry." Prior to trial, the defendants submitted a motion in limine which sought the exclusion of the "finding" of the tribunal from jury consideration. The trial judge held the statute to be unconstitutional in so far as it required the admission of such "finding" in evidence. Hence, the motion was granted. Trial of the matter resulted in a jury verdict for the defendants.

The plaintiff's subsequent, unsuccessful motion for a new trial was based, in part, on the exclusion of the tribunal "finding." Her notice of appeal incorporates that portion of her motion for a new trial in its sole claim of error. We granted the plaintiff's application for direct appellate review. We conclude that the exclusion from evidence of the determination of the tribunal was not error, but for reasons distinct from those stated by the trial judge. We affirm the judgment.

In "[e]very action for malpractice, error or mistake against a provider of health care," a prospective plaintiff must, shortly after the filing of the defendant's answer, appear before "a tribunal consisting of a single justice of the superior court, a physician licensed to practice medicine in the commonwealth [or a representative of the appropriate field of medicine] . . . and an attorney authorized to practice law in the commonwealth." G. L. c. 231, § 60B, inserted by St. 1975, c. 362, § 5. Upon being presented with the plaintiff's offer of proof, the tribunal, which is in

essence a screening body, is charged with determining whether "the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result." [2] The fifth paragraph of the statute provides, inter alia, that "[t]he tribunal may upon the application of either party or upon its own decision summon or subpoena any such records or individuals to substantiate or clarify any evidence which has been presented before it and may appoint an impartial and qualified physician or surgeon or other related professional person or expert to conduct any necessary professional or expert examination of the claimant or relevant evidentiary matter and to report or to testify as a witness thereto. . . . The testimony of said witness and the decision of the tribunal shall be admissible as evidence at a trial."

In most respects, any challenges, constitutionally based or otherwise, to the tribunal procedure for medical malpractice suits were answered in *Paro* v. *Longwood Hosp.*, 373 Mass. 645 (1977). The question of the admissibility at a subsequent trial of the determination of the tribunal, which is argued before us in this case, was not, however, presented in that case. *Id.* at 652 n.9, 656. It is an issue which has been the subject of no small amount of controversy and criticism, since the probative worth of the finding is, on its face, minimal to be sure, while the potential for unfair prejudice arising from its admission is unquestionably great. See Cohen, Medical Malpractice Tribunals, Part II, Problems of Construction with a Proposal for Revision, 62 Mass. L.Q. 105, 107-108 (1977); McLaughlin, A Look at the Massachusetts Malpractice Tribunal System, 3 Am. J.L. & Med. 197, 205 (1977); Note, The Massachusetts Medical Malpractice

---

[2] The tribunal's task in evaluating the offer of proof is comparable to that of a trial judge ruling on a defendant's motion for directed verdict. *Little* v. *Rosenthal*, 376 Mass. 573, 578 & n.4 (1978). As to the offer of proof, see *Kapp* v. *Ballantine*, 380 Mass. 186, 190 (1980); *Gugino* v. *Harvard Community Health Plan*, 380 Mass. 464, 467-468 (1980).

Statute: A Constitutional Perspective, 11 Suffolk U.L. Rev. 1289, 1307-1308 (1977); Barshak, The President's Page, 19 B.B.J. No. 9 at 3, 4-5 (1975).[3]

At the hearing on the motion in limine, the judge accepted the contention of the plaintiff's attorney that the statute does not allow judicial discretion in the admission of the tribunal "finding." The judge apparently assumed that the words "determination" and "decision," found in the first and fifth paragraphs of the statute, refer to a "finding" that no bond was required of plaintiff because the offer before the tribunal was "sufficient to raise a legitimate question of liability appropriate for judicial inquiry." His refusal, nevertheless, to admit the "finding" was based in part on his belief that the admissibility provision of § 60B violates fundamental due process considerations in admitting a decision which is based on evidence not subject to cross-examination at the tribunal hearing. He ruled in addition that the tribunal decision is not evidence of negligence, that it has no probative value on the question, and that it therefore ought not to be presented to the jury.

---

[3] More than one-third of the States have created compulsory medical malpractice screening tribunals. See Redish, Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications, 55 Tex. L. Rev. 759, 792 n.205 (1977). In most of the legislation involved, provision is made for the introduction in evidence at a subsequent trial of the determination of the panel. In contrast to G. L. c. 231, § 60B, these other statutes require the respective malpractice tribunals to conduct a miniature trial, somewhat equivalent to a master's hearing under Mass. R. Civ. P. 53, as appearing in 386 Mass. 1236 (1982), and to render their view of the merits of the case, based on the evidence presented to that point. Compare the statutes cited in Cohen, Medical Malpractice Tribunals, Part II, Problems of Construction with a Proposal for Revision, 62 Mass. L.Q. 105, 107-108 (1977), with *Kapp* v. *Ballantine, supra* at 194 n.4; *McMahon* v. *Glixman,* 379 Mass. 60, 68-69 (1979); *Little* v. *Rosenthal, supra.*

By the terms of § 60B, the screening tribunal must hear the action "within fifteen days after the defendant's answer has been filed," thus limiting discovery significantly. In addition, the standard for the introduction of evidence before the tribunal is not only significantly relaxed, see *Kapp* v. *Ballantine, supra,* but such evidence is ordinarily restricted to that contained in the plaintiff's offer of proof. See *Gugino* v. *Harvard Community Health Plan, supra* at 467-468; *McMahon* v. *Glixman, supra.*

The defendants, in challenging the validity of the statutory provision, argue that introduction of the tribunal finding violates the jury trial guarantees of the Massachusetts Declaration of Rights because the finding may be based on "suspect evidence introduced at a nonadversarial, unilateral hearing which is not reviewable by the trial court before admission." Admission of such "evidence," they claim, is likely to divert the jury from facts which should rightfully affect their verdict because of the undue deference typically given to a determination made by "professionals." Alternatively, the defendants argue that the word "decision" in the fifth paragraph of the statute does not apply to the tribunal's "determination" (described in the first paragraph) that the evidence presented to it, if properly substantiated, is sufficient "to raise a legitimate question of liability appropriate for judicial inquiry."

We begin with the proposition that it is our duty, if reasonably possible, to interpret statutes in a manner that avoids unnecessary decision of a serious constitutional question.[4] *Fazio* v. *Fazio*, 375 Mass. 394, 405-406 (1978). *Com-*

---

[4] The parties did not raise, and the judge did not consider, the construction of the statute which we now consider. The plaintiff urges us to follow our practice of not considering issues raised for the first time on appeal. *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 87-88 (1977) (issues not presented below "need not be considered on appeal"). We conclude that this salutary rule of appellate procedure is inapplicable to the circumstances of this case.

The issue of the constitutionality of G. L. c. 231, § 60B, was argued before the judge. The possibility that the statute might be interpreted in a manner which avoids passing on its constitutionality was open to the judge as it is to us. Thus, this question is not a "clearly independent issue raised here for the first time." *Royal Indem. Co.* v. *Blakely, supra* at 88. Rather, the instant case is one where we choose to affirm the ruling below on a ground not relied upon by the judge. *Alholm* v. *Wareham*, 371 Mass. 621, 625 (1976). *Greeley* v. *Zoning Bd. of Appeals of Framingham*, 350 Mass. 549, 551 (1966). See *Commonwealth* v. *Gustafsson*, 370 Mass. 181, 186 (1976); *Anderson* v. *United States*, 417 U.S. 211, 217 n.5 (1974).

More fundamentally, the plaintiff's argument seeks to bar this court from fulfilling its duty to avoid unnecessary decisions of serious constitutional issues. See *Fazio* v. *Fazio*, 375 Mass. 394, 405-406 (1978); *Com-*

monwealth v. *Bartlett,* 374 Mass. 744, 748-749 (1978). *Rugg* v. *Town Clerk of Arlington,* 364 Mass. 264, 268 (1973). See also *Ashwander* v. *TVA,* 297 U.S. 288, 347-348 (1936) (Brandeis, J., concurring). As construed by the judge, the language of G. L. c. 231, § 60B, raises a serious question of constitutional law.

We have held that the introduction of an auditor's report as prima facie evidence at trial does not violate the right to a jury trial in a civil case. *Baldassare* v. *Crown Furniture Co.,* 349 Mass. 183, 189-190 (1965). *Holmes* v. *Hunt,* 122 Mass. 505 (1877). Masters' reports are also admissible by virtue of Mass. R. Civ. P. 53 (e), as appearing in 386 Mass. 1236 (1982). Both such reports are "made after full hearing of both parties." *Holmes* v. *Hunt, supra* at 519. And see *Lubell* v. *First Nat'l Stores,* 342 Mass. 161, 163-165 (1961) (decision or finding by District Court for or against plaintiff after a trial is admissible). Similarly, statutes analogous to § 60B, which have been upheld in other jurisdictions, generally provide for a full hearing. See, e.g., *Seoane* v. *Ortho Pharmaceuticals, Inc.,* 660 F.2d 146, 148-149 (5th Cir. 1981); *DiAntonio* v. *Northampton-Accomack Memorial Hosp.,* 628 F.2d 287, 289-290 (4th Cir. 1980); *Beatty* v. *Akron City Hosp.,* 67 Ohio St. 2d 483, 487 (1981).

If we assume the Legislature has mandated admission of the tribunal determination, it could be said that the Legislature has merely provided a means for allowing in evidence matter which would be otherwise inadmissible as hearsay. "The constitutional power of the Legislature to prescribe rules of evidence is well settled," and is often exercised "to

---

monwealth v. *Bartlett,* 374 Mass. 744, 748-749 (1978); *Rugg* v. *Town Clerk of Arlington,* 364 Mass. 264, 268 (1973). We note that the court usually decides not to consider constitutional issues raised for the first time on appeal in order to avoid an unnecessary constitutional decision. *Lexington* v. *Bedford,* 378 Mass. 562, 567-568 (1979). The question whether this court should use its power to declare a statute unconstitutional is of wide public importance and extends far beyond the bounds of the instant case. In these circumstances, we cannot let the actions of private litigants force us to decide unnecessarily a serious question of constitutional law.

change the burden of proof, or to affect the question what shall be deemed *prima facie* evidence at the trial before the jury." *Holmes* v. *Hunt, supra* at 516-517. See 1 J. Wigmore, Evidence § 7 (1940 & Chadbourn rev. 1982). In this view of the statute, the Legislature would have blocked the application of both the hearsay and opinion evidence rules. At the same time, we would have to assume that, as regards relevance, a balance has been struck by the Legislature in favor of affording at least marginal probative value to the "evidence." See *Green* v. *Richmond,* 369 Mass. 47, 59 (1975). McCormick, Evidence § 185, at 437 (2d ed. 1972); Proposed Mass. R. Evid. 401, 402. Were such "evidence" to be admitted and insulated from further comment by either the trial judge or opposing counsel, however, the likelihood of unfair prejudice flowing from this result might well reach constitutional limits. We do not construe the statute to require this result. *Lubell* v. *First Nat'l Stores, supra.*

It could be argued further, however, that the findings of the tribunal would constitute something less than prima facie evidence; hence, a full hearing is not necessary.[5] We, of course, are bound not to inquire into the wisdom or expedience of a statutory provision, *Klein* v. *Catalano,* 386 Mass. 701, 707 (1982); *Pinnick* v. *Cleary,* 360 Mass. 1, 33 (1971) (Tauro, C.J., concurring), even when that duty appears to us to require that we conduct ourselves like Lord Nelson at Copenhagen.[6] As a reviewing court, we instead

---

[5] The use of limiting instructions explaining the nature of the tribunal proceedings and of the evidence before it, reminding the jury of their role as the finders of fact and notifying them that the determination itself is not binding on them and is not evidence of liability, might reduce the possibility of prejudice. Such an instruction would, of course, render the entire process meaningless. We decline to conclude that the Legislature intended to achieve a result wholly futile in nature.

[6] Lord Nelson, commanding a detachment of the British fleet against the Danish fleet, was signalled by his commander to leave off action, a course strongly contrary to his best inclinations. When the command was brought to his attention, he responded, "'You know, Foley,' . . . 'I have only one eye, — I have a right to be blind sometimes,' — and then putting

must "presume a statute's validity, and make all rational inferences in favor of it." *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 650 (1977). But this principle does not mean that we should ascribe to the Legislature an intent to achieve an irrational result. Instead, we must read the statute in a way to give it a sensible meaning. *Lexington* v. *Bedford*, 378 Mass. 562, 570 (1979).

The judge construed G. L. c. 231, § 60B, as requiring that the "determination" made by the tribunal as to the plaintiff's offer of proof must be admitted at trial. To reach this result, he evidently read the language of the first paragraph, which directs the tribunal to "determine" if the evidence presented is sufficient, into the fifth paragraph, which provides that "the decision of the tribunal shall be admissible." Such a reading is contrary to the basic structure of the statute and violates the rule that where the Legislature has employed specific language in one paragraph, but not in another, the language should not be implied where it is not present. *First Nat'l Bank* v. *Judge Baker Guidance Center*, 13 Mass. App. Ct. 144, 153 (1982).

Our review of the statute demonstrates that the Legislature addressed itself to distinct aspects of the tribunal in each individual paragraph. The first paragraph outlines the screening functions of the tribunal and establishes the standard by which its determination is to be made. The following paragraphs deal with various aspects of selecting the tribunal's members. Other paragraphs touch on the bond requirement and provide for the funding of the tribunal. The fifth paragraph dwells on what evidence may be introduced before the tribunal and at trial.

Given this scheme, we do not believe that it is proper for us to read the first and fifth paragraphs together in order to achieve a result which the Legislature did not provide for in

the glass to his blind eye . . . he exclaimed, 'I really do not see the signal!' Presently he exclaimed, 'Damn the signal! Keep mine for closer battle flying! That's the way I answer such signals. Nail mine to the mast!'" Southey, Life of Nelson, as quoted in Kenin and Wintle, Dictionary of Biographical Quotations of British and American Subjects 562 (1978).

either paragraph. The Legislature could have said, in either the first or the fifth paragraph, that the tribunal's determination is admissible evidence. But it did not do so, and we decline to imply language which the Legislature has omitted, particularly where such a result seems less than rational. See *Boylston Water Dist.* v. *Tahanto Regional School Dist.*, 353 Mass. 81, 83-84 (1967).

Rather, we choose to follow the canon of statutory construction that where words are used in one part of a statute in a definite sense, they should be given the same meaning in another part of the statute. *Plymouth County Nuclear Information Comm., Inc.* v. *Energy Facilities Siting Council*, 374 Mass. 236, 240 (1978).

The function of the medical malpractice tribunal described in the first paragraph of § 60B is to screen potentially meritorious claims from those that merely involve "an unfortunate medical result," and to impose a requirement of a bond on claims in the latter category. See *Little* v. *Rosenthal*, 376 Mass. 573 (1978). We have held that the task of the tribunal is comparable to that of a trial judge ruling on a defendant's motion for a directed verdict. See note 3, *supra.* "Rulings" are not evidence to be submitted to a jury for their consideration. Obviously, a ruling is distinct in function from a "finding" such as that of a District Court judge which may be submitted to a Superior Court jury pursuant to G. L. c. 231, § 102C. See *Lubell* v. *First Nat'l Stores, supra.* Consequently, the determination of the tribunal, referred to in the first paragraph of § 60B, is a "ruling" not to be admitted before the jury.

Turning to the fifth paragraph, we find the word "decision" used for the first time. The statute reads in part: "The tribunal may upon the application of either party or upon its own decision summon or subpoena any such records or individuals to substantiate or clarify any evidence which has been presented before it and may appoint an impartial and qualified physician or surgeon or other related professional person or expert to conduct any necessary professional or expert examination of the claimant or relevant

evidentiary matter and to report or to testify as a witness thereto. Such a witness shall be allowed traveling expenses and a reasonable fee to be fixed by the tribunal which shall be assessed as costs. The testimony of said witness and the decision of the tribunal shall be admissible as evidence at a trial." G. L. c. 231, § 60B, inserted by St. 1975, c. 362, § 5. The word "decision" here should be given one meaning. It refers to the decision of the tribunal to appoint an impartial expert. This reading is supported by the fact that the critical last sentence of the paragraph refers both to the testimony of the expert appointed by the tribunal and the decision of the panel to appoint him. We hold that only the "testimony" of an expert who testifies before the tribunal and the "decision" to appoint him need be admitted at trial.

Contrary to the plaintiff's suggestion, the information that the expert was appointed by the tribunal is not irrelevant. It allows the jury to evaluate the testimony of the expert with the knowledge that he has not been retained by either party. The Federal Rules of Evidence explicitly permit a trial judge to authorize disclosure to the jury of the fact that an expert witness had been appointed by the court.[7] Fed. R. Evid. 706(c). Thus the decision of the tribunal is quite relevant.

Our construction also eliminates any constitutional objections to the statute. Only the decision of the tribunal to call an expert, and the testimony of the expert before the tribunal, would be admissible, and both parties would have had an opportunity to question and cross-examine the expert before the tribunal.[8] So construed, the statute suffers from no constitutional defects. Cf. *In re Screws Antitrust Litigation,* 526 F. Supp. 1316, 1319-1320 (D. Mass. 1981).

*Judgment affirmed.*

---

[7] Indeed, the advisory committee's notes state that subdivision (c) is "essential if the use of court appointed experts is to be fully effective." Advisory Committee's Notes, Fed. R. Evid. 706(c). But cf. Proposed Mass. R. Evid. 706 (c).

[8] We note that the appointed expert may either "report" to the tribunal or "testify as a witness." The last sentence of the fifth paragraph, however, only provides for the admission of the witness's "testimony" before the tribunal. We assume that the Legislature intended that both parties would be given an opportunity to question and cross-examine the expert.