Kane, Robert J., J.
On November 19th, 2007, the plaintiff, J. Gregory Milne (“Milne”), filed a verified complaint against Linda Hutchenreider (“Hutchenrei-der”), in her official capacity as Town Clerk for the Town of Barnstable (“Town"). Milne alleged that although he was elected to the Office of Town Councillor and Charter Commission Member on November 26, 2007, Hutchenreider refused to swear him in to both elective offices. In his complaint, Milne sought: (1) a judgment declaring his right to be sworn in to both the position of Town Councillor and Charter Commission Member; (2) an order of mandamus commanding Hutchenreider to swear him in to both positions; and (3) a “mandatory affirmative preliminary injunction ordering [Hutchenreider] to swear [him] in to both the office of Town Councillor precinct 13 and Charter Commission Member.”
On December the 4th, 2007, the court (Connon, J.) heard Milne’s request for injunctive relief. In his request for injunctive relief, Milne argued that Hutchenreider’s action denied him his right to be elected as protected by Article 9 of the Massachusetts Constitution. Milne, however, failed to provide notice of his constitutional claim to the Office of the Attorney General as required by Mass.R.Civ.P. 24(d). Observing that both sides “had raised compelling arguments,” the court declined to determine the merits of the case and denied Milne’s request for injunctive relief [24 Mass. L. Rptr. 488, sub nom. Milne v. Barnstable Town Clerk].

CROSS MOTIONS FOR SUMMARY JUDGMENT

Both Milne and the Town have now moved for summary judgment. In view of Milne’s failure to notify the Office of the Attorney General of his claimed constitutional right to be sworn in to both elective offices, this court limits its summary judgment ruling to an interpretation of the Town’s Charter provisions on eligibility for elected town offices. I now set forth portions of the summary judgment record relevant to resolution of the summary judgment motions.
Barnstable operates under a Charter adopted by the voters in 1989 pursuant to Home Rule Charter Provisions codified in Chapter 43B of the Massachusetts General Laws. On February 10th, 1989, the Town’s Home Rule Charter Commission had submitted its final report to the Board of Selectmen. The Charter Commission’s submission contained an “explanation of proposed charter and statement of major differences.” Within the summary appeared the following synopsis of the provisions on “elected officials”:
Voters will continue to elect the School Committee, the Housing Authority, the Town Clerk and the Town Collector. Additionally, the voters will elect the members of the City Council. The office of the Treasurer will be filled by appointment and the Board of Selectmen and Town Meeting Moderator are abolished.
A similar explanation, serving as a ballot question summary, was presented to voters asked to approve the proposed Charter. As adopted, the Charter comprises ten parts, two of which address elective town offices. Part II, Section 2-1, entitled “Legislative Branch,” addresses the “Composition, Eligibility, Election, and Term of Town Councillors.” Section 2, subsection (b), entitled “Eligibility,” provides:
Only voters who at all times during their term of office shall be and remain residents of the town shall be eligible to hold the office of councillor. A member of the town council who shall remove from one precinct to another during the term for which such councillor was elected shall cease to be a member of the town council, provided however, a councillor with six months or less remaining on the term for which such councillor was elected, notwithstanding removal from one precinct to another, *587 shall continue to serve and perform all official duties during such term of office.
Part III, entitled “Elected Town offices,” consists of seven sections. Section 3-1, entitled “Elective Offices in General,” states:
In addition to the Town Council, the offices to be filled by the voters shall be a School Committee, a Town Clerk, a Town Collector and a Housing Authority, and such other regional authorities, districts or committees as may be established by law, or interlocal agreements.
Parsing Section 3-1, the section is a single sentence comprising two independent clauses. One clause covers five elective town offices, and the second covers “regional authorities, districts or committees as may be established by law or interlocal agreements." Following Section 3-1, Section 3-2 addresses the eligibility of “any elective town office,” while Sections 3-3 though 3-6 describe terms of office, powers and duties, and where appropriate, composition of the elective town offices of School Committee, Town Clerk, Town Collector, and Housing Authority. Completing the description of the elective town offices, Section 3-7 defines the procedure for filling a vacancy in all five “elective town offices.”[1]

AFFIDAVITS

The Town appended to its summary judgment motion: (1) an affidavit from Michael Daly (“Daly”), a member of the 1989 Charter Commission; (2) an affidavit from James Munafo (“Munafo”), a Town Councillor who considered running for both Town Councillor and Charter Commission Member in the 2007 election; and (3) an affidavit from Hutchenreider. Daly, a certified government accountant who operates a consulting business serving various local governments, stated that the Charter Commission discussed the eligibility of an elected town official to be elected to the Charter Commission and stated that “(W]e did not want people who were already elected to other positions in our local government serving on the Charter Commission.”
In his affidavit, Munafo stated that the issue of being able to serve simultaneously as an elected member of the Barnstable Charter Commission and Town Councillor arose at a prospective candidates event in June of 2007.[2] According to Munafo, Hutchenreider “indicated that she did not believe that was consistent with the Charter prohibition of holding more than one elective office, but said that she would confirm that with the town attorney.” Munafo stated that Hutchenreider subsequently “made it very clear that people could run for more than one elective office, but that they could not hold both.”
Also, the Town submitted a five-line e-mail from Town Counsel in which he simply answered, “[n]o” to Hutchenreider’s question of whether Munafo “could be elected Council[l]or and elected Charter Commission [M]ember, Town counsel noted that ”1 can’t think of any instance in the past when it has come up as a real issue." Conversely, Hutchenreider averred that prior to 2007 the question had come up and that it was “the Town’s position as advised by the Town’s Attorney that the prohibition in Section 3-2 did apply to the Barn-stable Charter Commission.”[3]
In his summary judgment materials, Milne establishes that a James Crocker serves on the Barnstable Town Council and on the Prudential Committee, an elective office to the Centerville Osterville-Marstons Mills Fire District.

RULING

In ascertaining the intent of Section 3-2 of the Town’s Charter, which addresses eligibility for elected town office, this court follows well-established principles of statutory construction. DiGiacomo v. Metropolitan Property & Casualty Insurance Company, 66 Mass.App.Ct. 343, 346 (2006) (“[statutory interpretation is the quintessential judicial responsibility to be undertaken using well-established guiding principles”). As the first principle, I look to the language of Section 3-2 to determine the drafters’ intent. See Hashimi v. Kalil, 388 Mass. 607, 609 (1983); see also, United States v. Holmquist, 36 F.3d 154, 159 (1st Cir. 1994), quoting United States v. Charles George Trucking Company, 823 F.2d 685, 686 (1st Cir. 1987) (“[s]tart... by looking at the language of the law”). The language in Section 3-1 must be “given effect consistent with its plain meaning and the intent of [its drafters].” Perry v. Commonwealth, 438 Mass. 282, 284-85 (2002).

Analysis of Text’s Composition and Content

The Town maintains that Section 3-2, entitled “Eligibility,” expresses clearly by its wording an intent to treat membership in the Charter Commission as an “elected town office” whose officer-holders shall not “simultaneously hold more than one elected town office.” Section 3-2 follows Section 3-1, entitled “Elective Offices in General.” As previously stated, Section 3-1 comprises one sentence consisting of two independent clauses with the first clause identifying five town elected offices and the second clause identifying regional elected offices. The Town Council constitutes the first elected town office listed in the first clause of Section 3-1.
Part II of the Charter, entitled “Legislative Branch,” describes the office of Town Councillor. Section 2-1 establishes the composition, eligibility, election, and term of Town Councillor. Subsection (b) of Section 2-1, entitled “Eligibility,” provides as follows:
Only voters who at all times during their term of office shall be and remain residents of the town shall be eligible to hold the office of councillor. A member of the Town Council who shall remove from one precinct to another during the term for which such councillor was elected shall cease to be a *588 member of the Town Council, provided, however, a councillor with six months or less remaining on the term for which such councillor was elected, notwithstanding removal from one precinct to another, shall continue to serve and to perform all official duties during such term of office.
Returning to Part III, entitled “Elected Town Offices,” Section 3-2, entitled “Eligibility,” provides that “any voter shall be eligible to hold any elected town office provided that no person shall simultaneously hold more than one elected town office.” Excepting the office of Town Councillor, whose composition, eligibility, and election are set forth within Section 2-l(a)-(c) of Part II, Sections 3-3 through 3-6 describe the terms of office, powers and duties, and, where appropriate, composition of the remaining four elected town offices. Following the description of elected town offices set forth in Section 2-1 and Sections 3-3 through 3-6, Section 3-7 describes the procedure for filling vacancies to those five elected town offices.

Conclusions on Section 3-2’s Scope

Even assuming that, despite the presence of Section 2-1(b) specially devoted to defining the eligibility of those running for the position of Town Councillor, Section 3-2 defines the eligibility for all five town elected offices, Section 3-2 fails to mention the office of Charter Commission Member. The drafters of the Charter Commission, who were its elected members, omitted any mention of Charter Commission when specifically listing elected town offices in the first clause of Section 3-1, entitled “Elective Offices in General.” Notwithstanding the use of “Commission” in the definition of “Town Agency or Agency,” in Section 9-4(g) of the Charter, the term Charter Commission or Commission fails to appear within Section 3-1, Section 3-2, or Sections 3-3 through 3-7. Neither the Charter Commission’s final report nor the Charter Commission’s minority report identifies Charter Commission as falling within the description of elected town offices. Finally, the ballot question summary prepared for voters’ education on the proposed Charter in describing the five elected town offices fails to mention Charter Commission or Commission.
The words found in the Town’s Charter, their arrangement for the purpose of expressing the difference existing between the classes of Town and regional elective offices and the use of repetition and amplification to express the definition of elective town offices plainly expresses what town elected offices are included within Section 3-2.
Even if this court resorts to the second independent clause of Section 3-1, which grammatically and logically is separate from the description of elected town offices, examination of that clause’s language fails to sustain the Town’s claim that Section 3-2 applies to the Charter Commission. Notwithstanding a tortured homogenization of regional elected offices with town elected offices, resort to the second independent clause of Section 3-1 fails to supply the term Charter Commission or Commission. Indeed, the Town recognizes the distinct electoral status of elected regional offices set forth in the second clause of Section 3-1 from elected town offices set forth in the first clause of Section 3-1 by permitting a regionally elected official to simultaneously serve as a elected town official.
Moreover the term “elected town office” excludes the Charter Commission. The two terms are by definition distinct from one another and their separation prevents either term from including the other.
A town naturally consists of organizational components which serve as its functional mechanisms. Divided into compartments, e.g. boards, departments and/or offices, a town through its boards, departments, or offices executes its legislative and executive responsibilities. Town offices thus constitute the apparatus regularly employed by a town in the exercise of its authority. Accordingly, a town’s offices are internal and subordinate to a town.
A Charter Commission is not internal or subordinate to a town but rather external and independent. Deriving its authority from the Massachusetts constitution and legislative enactment, a Charter Commission autonomously examines a town’s organizational arrangements, considers alternative forms and proposes structural changes. A Charter Commission’s external and independent authority categorically differentiates it from a town office. The separate form and nature of a Charter Commission from a town office precludes subsuming Charter Commission within the term “town office.”
Nor can the Town prevail in its argument that Section 3-2 implicitly covers Charter Commission Members by pointing to a body of reasoned and consistent administrative decisions in which the Town, through its officials, has interpreted Section 3-2 to apply to Charter Commission Members. While the law provides for deference to such local applications of a Charter’s meaning, see Atkinson v. Town of Ipswich, 34 Mass.App.Ct. 663, 666 (1997) (deference is shown to “reasonable and consistent interpretation of statutes . . .”), the record before this court fails to reveal specific examples prior to 2007, where the Town had occasion to apply Section 3-2 to a Charter Commission election.[4] Nor does the summary judgment record demonstrate that Town Counsel prior to 2007 issued any formal opinion expressing the reasoning underling a view that Section 3-2 covers election to the Charter Commission.
Admittedly, the evidence before this court presents the recollection of one individual who served on the 1989 Charter Commission. That individual, employed as a certified accountant whose business serves various local governments, asserted that the Charter Commission discussed the topic of Section 3-2 and that Charter Commission Members (“[w]e’j indicated an aversion to having elected Town officials simulta *589 neously serve as members of the Charter Commission. This lone memory fails to find support in the published, preexisting, documentary evidence on the 1989 Charter Commission’s deliberations and recommendations. Neither the final report published by the Charter Commission explaining its recommendations nor the ballot summary printed for the voters’ education provides evidence that the Commission’s deliberations and recommendations contained mention of Charter Commission Members falling within the scope of Section 3-2.
The absence of commentary by the Charter Commission in its final report of an inclusion of Charter Commission Members within Section 3-2 constitutes independent, antecedent, evidence contrary to the Town’s recent interpretation of the 1989 Charter. Indeed, what the Charter Commission’s report and the ballot summary included and omitted supports the proposition that Section 3-2 fails to cover the elected office of Charter Commission Member.

Avoidance of Constitutional Issue

Interpretation of Section 3-2 as exempting Charter Commission Members accords with the well-settled rule of statutory interpretation that interpretation of a law wherever possible should avoid a serious constitutional question. Ruggs v. Town Clerk of Arlington, 364 Mass. 264, 268 (1973) (“[i]t is our duly, if reasonably possible, so as to interpret the [law] as to avoid an unnecessary decision of serious constitutional questions”).
The Massachusetts Constitution, in Article 89 of the Amendments, defines the electoral qualifications of the nine-member Charter Commission which serves as the Town’s constitutional convention. In Article 89, the constitution provides for election of Charter Commission Members as follows:
The Charter Commission shall consist of nine voters of the city or town, who shall be elected at large without party or political designation at the city or town election next held at least sixty days after the order of the city council of the city or board of selectmen of the town. The names of candidates of such commission shall be listed alphabetically on the ballot used in such election. Each voter may vote for nine candidates.
Mass. Const. Amend., Art. 89, §3. Employing the same language set forth in Article 89, the legislature in enacting the Home Rule legislation codified in Chapter 43B, Section 6, adopted the same qualifications for election to a Charter Commission as established under the Massachusetts Constitution. This seamless adoption by the legislature of the constitutional language on the electoral qualifications of Charter Commission Members expresses a first principle of our framework of governance that “where the qualifications of . . . officers are fixed by the constitution, [neither the legislature nor any other body may] add to or subtract from them.” Opinion of the Justices, 240 Mass. 611, 614 (1922).
Based on the foregoing, this court declares that Section 3-2 fails to include Charter Commission Members.

ORDER

Summary judgment shall enter for Milne and a declaratory judgment shall issue that Section 3-2 of the Town’s Charter does not include Charter Commission Members.

As previously noted, Section 2-1 describes the election, eligibility, term and composition of the Town Council.

Thomas R. Rugo submitted a similar affidavit.

For purposes of summary judgment, the court adopts Hutchedreider’s memory.

In her affidavit, Hutchenreider avers only that “the issue had arisen in the past.”